**GRAY et al. v. MERRITT et al.*
(No. 691—4244.)**

(Commission of Appeals of Texas, Section A.
Oct. 14, 1925.)

1. **Evidence ⬅461 (1) — Surrounding facts and circumstances may be shown to determine intent of parties to ambiguous contract to drill oil well.**

In action to recover for abandonment of contract whereby plaintiffs were to furnish derrick for defendants to put down oil well, but depth of well was not specified, facts and circumstances showing probable depth parties contemplated oil would be found were properly admitted in evidence under rule that, when contract is ambiguous, resort may be had to surrounding facts and circumstances to show intent of parties.

2. **Mines and minerals ⬅109—On abandonment of contract to drill oil well by one of parties thereto the other party held entitled to rescission and to be placed in statu quo.**

Where contract provided plaintiffs should receive one-sixteenth working interest in oil well in consideration of furnishing derrick to defendants who were to drill well on abandonment by defendants plaintiffs were entitled to have contract rescinded and to be placed in statu quo by surrendering their right to one-sixteenth interest and recovering value of property furnished by them.

3. **Contracts ⬅256, 274 — On abandonment of contract by one of parties, other parties, if not at fault, may rescind; on rescission, party may recover value of property furnished.**

On abandonment of contract by one of parties thereto, other parties, if not at fault, may rescind contract, and, by restoring to defaulting party benefit he may have received under contract, may recover of defaulting party value of property furnished in pursuance of contract by rescinding party.

4. **Attachment ⬅8—Attachment may be had on filing suit for breach of contract, where damages may be definitely ascertained.**

Attachment issued on filing suit seeking rescission of contract for putting down oil well because of abandonment by one of parties was proper, since attachment may be had on breach of contract, where damages are not contingent, but capable of being definitely ascertained.

5. **Attachment ⬅122(2) — Notary public allowed to amend jurat to affidavit for attachment by adding title.**

Notary public, taking affidavit for attachment, may be allowed to amend his jurat to affidavit by adding to his signature words "notary public."

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by C. F. Gray and another against C. F. Merritt and another. Judgment for plaintiffs was reversed by Court of Civil Appeals (262 S. W. 539), and plaintiffs bring error. Judgment of Court of Civil Appeals re-

versed, and judgment entered reforming and affirming judgment of trial court.

Grisham Bros., of Eastland, for plaintiffs in error.

J. L. Zumwalt, of Dallas, and R. R. Mizell, of Eastland, for defendants in error.

HARVEY, P. J. This case is here on writ of error to the Court of Civil Appeals for the Eighth supreme judicial district, sued out by plaintiffs in error C. F. Gray and J. E. Spencer against defendants in error C. F. Merritt and J. W. Jewell for the purpose of having reviewed by this court a judgment entered herein by said Court of Civil Appeals reversing the judgment of the trial court herein and remanding said cause for another trial.

The facts forming the basis of suit and other relevant matters shown by the record are substantially as follows:

On May 6, 1922, said C. F. Merritt held an oil lease on a certain tract of five acres of land in Eastland county, in the vicinity of which tract a number of oil wells had been drilled by other operators, and a strata of oil sand found at a depth of approximately 2400 or 2500 feet. The said C. F. Merritt and J. W. Jewell, desiring, as partners in the enterprise, to drill a well on said tract of land for the purpose of finding and producing oil therefrom, entered into negotiations with said C. F. Gray and J. E. Spencer with the view of making a contract with said last named parties of the nature and effect of the contract that was thereafter entered into between said parties as hereinafter shown. During all such negotiations all the parties to such contract knew the depth at which oil had been found in such other wells that had been theretofore drilled by other operators in the vicinity of said five-acre tract of land, as above shown, and agreed, understood, and contemplated that, if oil were to be found and produced from said five-acre tract of land, it would be necessary to drill to the approximate depth of such other wells in that vicinity, to wit, approximately 2400 or 2500 feet, and that there was no probability or prospect of finding oil on said five-acre tract of land at a materially lesser depth.

All of said parties, having discussed the foregoing matters among themselves, and having same in contemplation at the time, made and entered into a joint contract on May 6, 1922, wherein and whereby the said Merritt and Jewell agreed and bound themselves "to drill an oil well" on said five-acre tract of land, and "to pay all expenses of drilling said well and to furnish all tools, pipe, etc., necessary for the drilling of same." Under and by the terms of said contract said Gray and Spencer agreed and were bound to furnish "all the material and labor necessary for the erection of a standard derrick to be located on said five acres of land" for the

---

use of said Merritt and Jewell in drilling said oil well. And in consideration of such obligation on the part of said Gray and Spencer to furnish said derrick, as above stated, they were to be "entitled to a one-sixteenth interest in said well, or to receive one-sixteenth of the gross production thereof," etc.; and, as additional evidence of the rights of Gray and Spencer in the joint enterprise, said C. F. Merritt, as part and parcel of such contract, assigned to Gray and Spencer "an undivided one-sixteenth working interest in all oil, gas, and other minerals in and under that may be produced" from said tract of land. Such contract so made and entered into by and between said parties is evidenced by two instruments of writing executed contemporaneously with each other, and in the same transaction, on May 6, 1922; one of said instruments showing the obligations and contractual rights of the respective parties to the contract, as hereinabove stated, and the other showing the assignment of said one-sixteenth "working interest" to Gray and Spencer as above stated.

Within two weeks after the date of said contract said Gray and Spencer completed and delivered into the possession and control of Merritt and Jewell the derrick which they were obligated by said contract to furnish in said enterprise, and Merritt and Jewell thereupon took possession and control of said derrick, and began using same in the drilling of a well on said five-acre tract of land. The value of said derrick, when completed, as aforesaid, was found by the jury to be $3,000. When said derrick had been completed and furnished as above stated, the said Merritt and Jewell began the drilling of a well on said five acres of land, as above stated, and continued such drilling operations therewith until about the first part of August, A. D. 1922, when they ceased such drilling operations, and, without the fault or consent of Gray and Spencer, abandoned the further drilling of such well, and have not since such time conducted any drilling operations on said tract of land. The depth reached in the drilling of such well when same was abandoned by Merritt and Jewell, as above stated, was approximately 1000 or 1200 feet. The said Merritt and Jewell did not prosecute with due diligence the drilling of a well on said land to a depth where it was contemplated and understood by the parties to such contract, at the time of the making of the contract, that oil was probably to be found, to wit, to a depth approximately 2400 or 2500 feet, but they have abandoned such contract, without legal excuse, and had so abandoned same when this suit was filed.

On January 9, 1923, said Gray and Spencer, as plaintiffs, filed this suit to rescind said contract on account of said nonperformance and abandonment of same by Merritt and Jewell, and to recover of said last-named parties the sum of $3,000, being the value of said derrick furnished by them to Merritt and Jewell in pursuance of said contract. At the time of filing of such suit said plaintiffs procured the issuance and execution of a writ of attachment, which was levied upon certain property of said defendants.

Upon the trial of the case before the trial court, with the aid of a jury, judgment was rendered in favor of Gray and Spencer for the sum of $3,000, as sued for, with foreclosure of the attachment lien, and against defendants, Merritt and Jewell, on their cross-action for damages. The judgment rendered by the trial court does not in express terms declare said contract rescinded, nor does it in express terms declare rescinded said assignment of the one-sixteenth "working interest" by Merritt to Gray and Spencer. But the pleadings and evidence of plaintiffs Gray and Spencer show such "working interest" to be practically worthless, and that they have derived no benefit therefrom, and that they "offer to do full equity in the premises, under the direction of the court" in regard to said one-sixteenth "working interest."

We have not undertaken to set out in detail the pleadings of the parties, nor the evidence, but have only set out the substance of such relevant facts established by the verdict and judgment rendered in the trial court, as we deem sufficient to a proper understanding of the questions of law which we shall now proceed to discuss.

The terms of the written contract obligated Merritt and Jewell to "drill an oil well" on said tract of land. The term "oil well," as used in such written contract, is ambiguous, and of uncertain meaning, and the written terms of the contract of themselves furnish no test by which the meaning of such term may be determined. The written terms of such contract do show that it was contemplated that the "oil well" to be drilled by Merritt and Jewell might probably eventuate in a "dry hole," and express provisions are made to govern the rights of the parties in such event. But the point or depth at which the "oil well" shall be deemed a "dry hole" under the terms of the contract is not shown by the face of the contract.

It is a well-recognized rule of construction that, when the terms of a written contract are uncertain in meaning, and the language of such instrument, as written, is ambiguous or of doubtful construction, resort may be had to the surrounding facts and circumstances, connected with its execution, as will tend, not to contradict or vary the terms of the instrument, but to explain its purpose and meaning, in order to arrive at the intent of the makers of the contract. This rule of construction has been so long established in this state, and is supported by so many decisions of this court, that no good purpose can be served by a citation of authorities in support thereof.

[1] Under such rule of construction, the

trial court very properly admitted in evidence and considered the facts and circumstances surrounding the execution of this contract, which were in contemplation of the parties at the time of the execution of the contract and with reference to which the parties used the language they did in making the contract. Such evidence is abundantly sufficient, and entirely competent, to prove that the term "oil well," which Merritt and Jewell were in terms obligated to drill under the provisions of the contract, meant, and was intended by the contracting parties to mean, an opening or hole sunk into the earth, in the usual way, to such a depth as, in the light of the facts and circumstances then known to the contracting parties, oil would probably be found, and where, because of such known facts and circumstances, the contracting parties at the time contemplated oil would probably be found, to wit, a depth of approximately 2400 or 2500 feet.

This was the obligation of Merritt and Jewell under the contract, and they were impliedly obligated to prosecute such drilling operations with due diligence, which they failed to do; but, on the contrary, they have renounced their obligations and abandoned the contract.

[2] The contract being abandoned as it was by Merritt and Jewell, the plaintiffs in error Gray and Spencer are entitled to have the contract declared rescinded, and to be placed in statu quo by surrendering such rights as they may have under said assignment of such one-sixteenth "working interest" and recovering the value of the property which they had furnished to Merritt and Jewell in pursuance of the contract, as they sought to do herein.

[3] Upon abandonment of a contract by one of the parties thereto, the other party, if not in fault, may rescind such contract; and, by restoring or offering to restore to the defaulting party such benefits as may have been received under the contract by the party so rescinding, may recover of the defaulting party the value of such property as may have been furnished to the defaulting party in pursuance of the contract by such rescinding party. In such circumstances there arises, independent of the expressed obligations of the contract, an implied obligation on the part of the defaulting party to pay to the rescinding party the value of the property so furnished at the time it was furnished.

At this point we deem it proper to say that, while the judgment of the trial court considered in the light of the entire record of this case, in legal effect rescinds the entire contract between said parties, including said assignment of said one-sixteenth "working interest" in the oil, gas, and other minerals in or under said tract of five acres of land by C. F. Merritt to C. F. Gray and J. E. Spencer, bearing date May 6, 1922, we recommend that, in the interest of clearness, the judgment of the trial court be so reformed as to clearly and expressly effect that result.

[4] Complaint is made by defendants in error Merritt and Jewell of the attachment which was caused to be issued by Gray and Spencer upon the filing of this suit. The contention is made that the demand of Gray and Spencer herein is unliquidated, and not such a demand as will authorize the issuance of an attachment. This contention is unsound. An attachment may be issued upon every demand founded on the breach of a contract where the damages claimed are not contingent, but are actual and capable of being definitely ascertained by the usual means of evidence, and do not rest in the discretion of the jury. Revised Civil Statutes of 1911, arts. 240 and 243; Hockstadler v. Sam, 73 Tex. 318, 11 S. W. 409.

[5] Defendants in error also complain of the action of the trial court in allowing the notary who took plaintiffs' affidavit for the attachment herein, to amend his jurat to said affidavit by adding to the signature of said notary the words "Notary Public, Eastland county, Tex." The trial court did not commit error in allowing such amendment by the notary. Ryan v. Goldfrank, 58 Tex. 358.

We see no useful purpose in discussing in detail each of the many questions discussed by defendants in error. We have duly and carefully considered all such matters as are properly presented for consideration, and we have found no sufficient reason in law for the reversal of the judgment which the trial court rendered herein.

We therefore recommend that the judgment of the Court of Civil Appeals reversing the judgment of the trial court and remanding this cause for another trial be reversed, and that judgment be here entered reforming the judgment of the trial court in the respects hereinabove pointed out, and, when so reformed, that said judgment of the trial court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the District court reformed and affirmed, as recommended by the Commission of Appeals.