## CENTRAL TEXAS DAIRYMEN'S ASS'N v. JONES et al.

### No. 1456.

Court of Civil Appeals of Texas. Waco.

Jan. 18, 1934.

Rehearing Denied Feb. 15, 1934.

Tirey & Tirey, of Waco, for appellant.

Geo. W. Barcus, of Waco, for appellees.

PER CURIAM.

The Central Texas Dairymen's Association is a non-profit, co-operative association of dairymen organized under chapter 8, title 93, of Revised Statutes 1925 (article 5737 et seq.). J. B. Jones is a member of said association. In July, 1932, the association, for the purpose of fixing the price at which the dairy products of its members should be sold, entered into a written contract with its members, who were referred to as producers, which contract was

signed by Jones and provided, in part, as follows:

"The Association agrees to buy, and the producer agrees to sell to it, all milk produced or acquired by the producer, except milk for home consumption, for a period of three years from the date hereof in the manner provided by the terms of this contract and under the provisions of the co-operative marketing laws of Texas and at the minimum prices and under the regulations fixed by the Board of Directors of this Association and approved by the members at large as set forth in the by-laws, with the following express stipulations and provisions:

"(a) That distributors and other wholesale buyers of milk shall have the right to select from the members of this Association, with the concurrence of such members, these members from whom they desire to procure milk, and all milk so delivered by the producer herein to such distributors and (or) such other wholesale buyers of milk shall be considered as having been delivered to and sold to the Association itself, Producer herein agreeing to file sworn report of such sales and deliveries with the Association each Monday morning for the previous week.

"(b) That the Producer shall have the right to make deliveries direct to his individual customers, sworn reports of such deliveries being filed each Monday morning with the Association for the previous week, and milk so delivered shall then be considered as having been sold and delivered direct to the Association.

"(c) That collections for any and all milk sold and delivered as set forth in either or both of subparagraphs (a) and (b) above shall be made by the Producer direct from the distributor, wholesale buyer, or individual customer, as the case may be, but on any and all milk delivered under said sub-paragraphs (a) and (b) Producer agrees to pay into the Association at the time of filing of weekly reports as provided under said sub-paragraphs a sum equivalent to ⅓ cent per gallon for each gallon of milk so delivered by him."

Thereafter the board of directors of the association, with the consent of its members and by proper resolution, fixed the price of sweet milk at 7 cents per quart. The association brought this suit against J. B. Jones, the producer, and Crippen Bros., who are engaged in the grocery business in the city of Waco, and alleged, among other things, that Jones had violated his contract and was selling his milk to Crippen Bros., for 6 cents per quart, which was less than the contract price. The plaintiff sought an injunction restraining Jones from selling, and Crippen Bros., from buying, said milk at less than 7 cents per quart. Jones, by way of cross-action, alleged that the association had violated its contract and had refused to take the milk produced by him and that by reason thereof he was entitled to have the contract canceled.

The case was tried before the court without a jury and resulted in a judgment denying plaintiff any relief and in favor of the defendant Jones on his cross-action for cancellation of the contract. The plaintiff appealed.

The trial court did not file any findings of fact. The judgment imports an implied finding that Jones had not violated the terms of the contract sued on. The appellant concedes that the evidence was sufficient to support such implied finding and consequently does not contend that there is any error in that part of the judgment denying the plaintiff a recovery. Its only contention is that the court erred in canceling the contract between Jones and the association as prayed for by Jones in his cross-action.

The evidence shows without dispute that in the latter part of January, 1933, Jones went to the association for the purpose of ascertaining whether or not it would accept the milk produced by him at the price of 7 cents per quart as fixed by the board of directors, and that the association refused to accept same. The secretary of the association testified that the association had never made any arrangements to handle milk and never contemplated taking the milk produced by its members. He further testified that the association would refuse to accept milk produced and tendered to it by Jones. The contract provides, "the association agrees to buy and the producer agrees to sell to it all milk produced or acquired by the producer * * * at the minimum prices and under the regulations fixed by the board of directors." We think the written contract, when read in connection with the resolution passed by the board of directors fixing the price of milk at 7 cents per quart, bound the association to accept the milk produced by Jones and to pay him therefor the sum of 7 cents per quart. Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S. W. 1101, par. 4. The association by failing to provide for the acceptance of milk produced by its members and by refusing to accept milk produced and tendered to it by Jones breached its contract and Jones was entitled to have said contract canceled. 10 Tex. Jur. 383; Gray v. Merritt (Tex. Com. App.) 276 S. W. 187; Hausler v.

Harding-Gill Co. (Tex. Com. App.) 15 S.W.(2d) 548; Powers v. Sunylan Co. (Tex. Com. App.) 25 S.W.(2d) 808.

The judgment of the trial court is affirmed.