## SAN ANTONIO FIRE FIGHTERS' LOCAL UNION NO. 84 v. BELL et al. (No. 6435.)

(Court of Civil Appeals of Texas. San Antonio. June 19, 1920. Rehearing Denied June 26, 1920.)

1. **Associations** &#9082;20(1)—**Labor union could not sue in name of organization to protect several rights of members.**

Rev. St. art. 6149, is based upon convenience and economy in permitting all the members of a joint-stock company or association to sue in the name of the association in order to conserve a joint right or address a joint wrong, and it was never intended that the name of the association could be used to ascertain and protect the several rights of the members or redress their several wrongs.

2. **Associations** &#9082;20(2)—**Trade unions** &#9082;9 —**Association can only sue in name of association to protect property rights.**

An association, labor union, or the like cannot sue in its own name, under Rev. St. art. 6149, unless property rights in which the membership is jointly interested are involved,

and a labor union could not maintain a suit in its name to restrain a city from discharging certain members of the fire department, there being no contract between the labor union and the city.

3. **Pleading** &#9082;34(4)—**Construed against pleader in equity.**

The rule of pleading that the statements of a party are to be taken most strictly against him is reinforced in injunction suits by the further requirement that the material and essential elements which entitle him to relief shall be sufficiently pleaded to negative every reasonable inference from the facts so stated, from which it might be deduced that he might not, under other supposable facts connected with the subject, thus be entitled to relief.

4. **Evidence** &#9082;83(2)—**Municipal corporations** &#9082;218(3) — **Grounds of discharge of employés lodged in discretion of commissioners.**

Under the charter of the city of San Antonio, providing that "any appointive officer or employé may be removed or discharged only by a majority vote of the commissioners on charges preferred in writing and after a public hearing of such charges by said commissioners," the offenses for which employés may be removed are lodged in the discretion of the commissioners, and no one can attack the exercise of that discretion without showing a gross abuse of it or fraud, after the removal or discharge has taken place, and from no principle of law or equity can a court presume, on allegations of threats of dismissal made by a fire chief, that the officers clothed with authority to remove would do it regardless of the requirements of the charter.

5. **Municipal corporations** &#9082;218(1)—**Commissioners of San Antonio have absolute power of removal of employés.**

Under the charter of the city of San Antonio the city commissioners have the absolute power of the removal of employés if it is done publicly and on written charges; and, if their action is not based on fraud or corrupt motives, it cannot be restrained, but, of course, such charges must not be frivolous or trivial, for such charges would be fraudulent.

6. **Master and servant** &#9082;30(1) — **Discharge without reason proper.**

In the absence of a contract, an employer has the authority to discharge an employé with or without reason.

7. **Municipal corporations** &#9082;63(1)—**It cannot be said that municipality has no authority to discharge labor union employés so as to transfer trial of the question to the courts.**

It cannot be said, as a matter of law, that a municipal corporation has no right or authority to determine that membership in a certain labor organization renders its appointees inefficient or untrustworthy, so as to transfer trial of the question to the courts.

8. **Municipal corporations** &#9082;218(1) — **In absence of statute, may discharge employés same as individual.**

The right of a municipal corporation is the same in regard to removal of its employés as

---

&#9082;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

is that of an individual or private corporation in the absence of statute.

**9. Municipal corporations ⬤⟽155, 218(1) — Power of removal of officers or employés executive or administrative function.**

The exercise of the power of the removal of an officer or employé by commissioners of a city is essentially administrative or executive, and the mere fact that the charter of a city requires a trial does not alter the executive character of the municipal body.

**10. Municipal corporations ⬤⟽218(9)—Cannot review exercise of executive discretion.**

Even if an appeal were permitted from a decision of the city commissioners of San Antonio, removing city employés after a public trial required by the city charter, the court could not review the exercise of executive discretion; but only in the absence of some essential formality or apparent arbitrary oppressive and fraudulent action, and not upon the questions of fact, could the removal be inquired into by the court. •

**11.· Estoppel ⬤⟽62(5)—City officers cannot be estopped to perform duties by ante-election promises.**

City officials cannot be estopped to perform their official duties by any ante-election promises or representations.

**12. Estoppel ⬤⟽62(5)—Harm necessary to be shown to create estoppel against city officers.**

Assuming that city officers could be estopped to perform official duties by ante-election promises, allegations by members of a labor union that city commissioners made ante-election promises that they would not discharge firemen belonging to a union, and that they were threatening to do so, and that the promises caused the members to remain in the union, did not show that the members of the union were misled to their harm, since they can still withdraw from the union if they so desire.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by the San Antonio Fire Fighters' Local Union No. 84 against Sam C. Bell and others, as Mayor and Commissioners of the city of San Antonio. Judgment for defendants, and plaintiff appeals. Affirmed.

Ryan & Matlock, of San Antonio, for appellant.

R. J. McMillan and J. D. Dodson, both of San Antonio, for appellees.

FLY, C. J.    Appellant, describing itself as "a local voluntary union labor organization, which subscribes to the principles, rules, and regulations promulgated, or prescribed, by the American Federation of Labor for the benefit and protection of its members, and has an office in the city of San Antonio, Bexar county, Tex., where it holds its meetings and transacts its business, and has a membership of about 190 members," instituted this suit against Sam C. Bell, mayor of the city of San Antonio, Phil Wright, commissioner of fire and police, Andres Coy, commissioner of taxation, L. Heuermann, commissioner of streets, Ray Lambert, commissioner of parks and sanitation, and A. J. Goetz, fire chief, alleging that—

"A large number of its members are now in the employ of the city fire department of the city of San Antonio, Tex., and that the defendants, and each of them, have unlawfully and illegally conspired together with each other, and other organizations and persons who are at the present time unknown to plaintiff, for the purpose of breaking up and disrupting and destroying the San Antonio Fire Fighters' Local Union No. 84, and are seeking and endeavoring to intimidate the members of the city fire department, who are members of the San Antonio Fire Fighters' Local Union No. 84, by threatening to discharge them from the employment of the city unless they withdraw their membership from plaintiff, the San Antonio Fire Fighters' Local Union No. 84."

It was further alleged that appellant was organized for a lawful purpose, and the threatened action of appellees, not only tends to destroy the organization, but to damage the members by depriving them of "the right and privilege to have and maintain employment in the fire department of the city of San Antonio, * * * unless they dissolve their connection with the said San Antonio Fire Fighters' Local Union No. 84."

It was alleged that about 187 members of appellant's union were members of the fire department of San Antonio, and that about January 22, 1919, and prior to the election of appellees to the respective offices held by them, they wrote, in their official capacity, to appellant, that—

"There was no disposition on the part of the mayor or any one of the commissioners to discriminate against any man because he belonged to the Fire Fighters' Union. And said fire fighters' union, then believing that the defendants and each of them were sincere in the statement with regard to making no discrimination against them, continued, and now continue, their affiliation with said San Antonio Fire Fighters' Union No. 84, believing that they had the right to do so under the laws of the land, and that in doing so they would have equal protection and equal right of employment in the city fire department with other parties who are not members of the San Antonio Fire Fighters' Local Union No. 84, as aforesaid."

It was also alleged that the suit was brought, not only for appellant, but in behalf of each member thereof, "and for the purpose of preventing the said defendants, and each of them and their coconspirators from disrupting and breaking up said organization, and from disqualifying the members of said organization for equal right to employment with others who are not mem-

---

⬤⟽For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

bers of said fire fighters' union, and to prevent their being discharged from said employment by the defendants, if such members see proper to refuse to give up their memberships in the San Antonio Fire Fighters' Local Union No. 84." Attached to and made a part of the petition were the affidavits of C. H. Muehl, Blaz M. Quintero, C. W. Felter, W. H. Schoub, P. C. Roche, O. P. Bernhardt, C. L. McRae, and T. R. Chew. The general tenor of the affidavits was that Fire Chief Goetz had asked each of the men to withdraw from the union, and in two or three of them it was stated that Goetz had said that the "mayor and the commissioners are going to bust up the union," or words to that effect. In the affidavit of T. R. Chew he stated that Goetz asked him, "If the firemen were to go on a strike, would you go with them?" to which affiant replied, "I would." An injunction was sought to prevent the discharge of members of the union.

Appellees filed a general demurrer and general denial and special answer. The court sustained the general demurrer to original petition and a trial amendment, which merely stated that appellant "is acting under a warrant or authority from the International Association of Fire Fighters, which is affiliated with the American Federation of Labor," and the cause was dismissed. An appeal was perfected by appellant, and the cause advanced and set down for a hearing by agreement of the parties.

No question arises in this case as to the right of citizens of Texas to organize themselves into trade unions. The laws of Texas recognize the validity of such organizations, and permit the incorporation of organizations of laboring men, working men, wage-earners, and farmers to protect themselves in their various pursuits. Article 1121, Rev. Stats. It follows that it is unnecessary and unprofitable to indulge in the discussion of the right of unions to exist under the laws of Texas, for it has been made "lawful for any and all persons engaged in any kind of work or labor, manual or mental, or both, to associate themselves together and form trades unions and other organizations for the purpose of protecting themselves in their personal work, personal labor, and personal service, in their respective pursuits and employments." Article 5244, Rev. Stats. Whether that would apply to persons in the public service as public officers is a very different question. Unlike the ordinary employé, the firemen in San Antonio are appointed by constituted city authorities for a specified term of two years, and they can be discharged or removed only by a majority vote of the commissioners, on charges preferred in writing and after a public hearing of such charges by said commissioners. It is questionable whether the statute had in view the officers or appointees of a state, county, or municipal government; but, as a decision of that question

is not essentially necessary, we do not decide it.

This suit was brought by an unincorporated, joint-stock company or association, and under the provisions of article 6149, Revised Statutes of Texas, if it is doing business in this state, it may sue or be sued in any court of this state having jurisdiction of the subject-matter in its company or distinguishing name, and it is provided that it shall not be necessary to make the individual stockholders or members thereof parties to the suit. The statute had in view to place a joint-stock company or association upon the same footing as to suing and being sued as a partnership, and rules applying to suits by and against partnerships would, to some extent at least, apply to this case. The main object in permitting joint-stock companies or associations to sue was to prevent the necessity of making the individual stockholders or members thereof as parties to the suit. As in suits by partnerships, the individual rights of the members cannot be maintained and individual wrongs redressed through a suit by the association. It must be a joint right that is to be enforced, or a joint wrong that is to be redressed. Appellant sues to redress a wrong to the association which it claims arose by an anticipated wrong which may be inflicted on its members severally. It pleads that an attack will be made upon it, if its members should be dismissed from the service of the city by the mayor and commissioners.

[1] Article 6149 is based upon convenience and economy, in permitting all the members of a joint-stock company or association to sue, in the name of the association in order to conserve a joint right, or redress a joint wrong, and it was never intended that the name of the association could be used to ascertain and protect the several rights of the members or redress their several wrongs. Mayhew Co. v. Valley Wells Ass'n, 216 S. W. 225.

[2] We are of opinion, not only that appellant could not sustain a suit shown to be a several and not a joint one, but also that suits by or against a joint-stock company or association can be sustained only as to property rights in which the membership is jointly interested. The very language of the statute seems to imply that the company or association can sue or be sued only about property rights, for it limits the right to those companies "doing business in the state," showing an intent to confine such suits to matters of business. There is no allegation in the petition of any property right of the association that was threatened by the mayor and commissioners, but from the petition it clearly appears that no right is threatened, except that of the individual member, in which the company or association had no property right whatever. No contract

between the association and the city of San Antonio was being threatened or invaded. It had no contract with the city, and no right belonging to it was about to be assailed. It had no right upon which to base an application for an injunction.

[3] If appellant were authorized to sue to redress or prevent wrongs perpetrated or about to be committed upon its individual members, it has utterly failed to comply with the rules of equity in stating its cause of action. The ordinary rules of pleading are made more stringent in injunction cases. As said in other cases, and copied into and approved in Gillis v. Rosenheimer, 64 Tex. 243:

"The rule of pleading, that the statements of a party are to be taken most strongly against himself, is reinforced in injunction suits by the further requirement that the material and essential elements which entitle him to relief shall be sufficiently certain to negative every reasonable inference upon the facts so stated, from which it might be deduced that he might not, under other supposable facts connected with the subject, thus be entitled to relief."

[4] The charter of the city of San Antonio provides that—

"Any appointive officer or employé may be removed or discharged only by a majority vote of the commissioners on charges preferred in writing and after a public hearing of such charges by said commissioners."

There is no attempt to designate the grounds upon which written charges shall be based, or the offenses for which officers or employés may be removed or discharged, but those matters are lodged in the discretion of the commissioners, and no one could attack the exercise of that discretion without showing a gross abuse of it, or fraud, after the removal or discharge had taken place. Upon no principle of law or rule in equity could a court presume from allegations of threats of dismissal made, not by the commissioners, but by the fire chief, an officer with no power to remove or discharge, that the officers clothed with authority to remove would do it regardless of the requirements of the charter. It is not alleged that any charges in writing had been preferred, nor that any attempt was being made to try men who might be members of the union. Upon bare allegations of threats to discharge members because of their membership in the joint-stock company or association, the trial court was asked to enjoin the commissioners of the city of San Antonio from performing a duty imposed by the Legislature of the state, upon a surmise, an inference, or a presumption that they would not perform that duty in compliance with law. The law invests the commissioners with discretionary powers in the removal or discharge of officers or employés, and it must be presumed that the discretion will be exercised in a lawful manner.

[5] The power of removal or discharge granted to the commissioners vests in them the absolute power of removal, if it is done publicly and upon written charges; and, if their action is not based upon fraud or corrupt motives, it cannot be restrained. The Legislature evidently intended to give full discretion as to the removal of officers or employés to the commission, because, prior to the present charter, the power to remove was given for all except political reasons, and the change was made in view of decisions on the subject. The present charter leaves the commissioners unhampered, except by good faith and an absence of fraud.

[6] The general rule is that, in the absence of a contract, the employer has the authority to discharge an employé with or without reason, and the only change made in that rule, so far as the city of San Antonio is concerned, is that charges must be preferred in writing, and the trial must be public on those charges. It must be inferred that the Legislature intended that the charges must not be frivolous or trivial, for such charges would be fraudulent. It must be presumed that, before any of appellant's members are removed or discharged, proper charges in writing will be filed and a just trial had thereunder. City of San Antonio v. Tobin, 101 S. W. 269; White v. Manning, 46 Tex. Civ. App. 298, 102 S. W. 1161; City of San Antonio v. Newnan, 218 S. W. 128.

[7] It cannot be said, as a matter of law, that a municipal corporation has no right or authority, as must be the claim of appellant, if there is any basis for its suit, to determine that membership in a certain organization renders its appointees inefficient or untrustworthy, and, even without admission on the part of one of the affiants that he owed a higher duty to his union than his city in case of orders for a strike upon the part of the firemen, it cannot be assumed that a fair trial will not be given the members of the union. To make such assumption and grant an injunction to prevent the commissioners of the city from performing their functions under the charter, granted by the Legislature of Texas, and transfer the trial of officers or employés to the district court, would be a usurpation of power which cannot consistently be sanctioned in a democratic government.

Appellant relies on the argument that, as it has been held in the Missouri case of State v. Julow, 129 Mo. 163, 31 S. W. 781, 29 L. R. A. 257, 50 Am. St. Rep. 443, that a law was unconstitutional that made it unlawful to attempt by any means "to compel or coerce any employé into withdrawal from any lawful organization or society," therefore it follows that the union man cannot be discharged for belonging to a union. The law of Missouri was held unconstitutional as interfering with the right to contract, and as being discriminatory in confining its provisions to certain individuals of a certain class. It

merely recognizes the right of the employer to make conditions as to those who enter into or remain in his service. In other words, it holds that an employer could not be prevented by law from requiring his employés not to join or withdraw from a union, thereby recognizing the right to discharge if the employé connects himself with such organization or remains therein after being warned to disconnect himself from it. The syllabus is:

"Act of March 6, 1893, making it unlawful for an employer to prohibit an employé from joining, or to require an employé to withdraw from a trade or labor union or other lawful organization, is unconstitutional, as being special legislation."

If the Missouri case be the law, then the commissioners of San Antonio would be empowered to require that its employés should withdraw from any organization to which they might belong. In the Julow Case an employé was discharged because he would not withdraw from a labor union, and Julow, his employer, was prosecuted for the discharge and convicted in the trial court, but on appeal the Supreme Court of Missouri reversed the judgment and dismissed the prosecution. Appellant states that the Missouri case has been cited with approval 61 times by state and federal courts of the United States, and, of course, as an authority the case assumes considerable force and dignity. In the cases of Miller v. City of Des Moines, 143 Iowa, 409, 122 N. W. 226, 23 L. R. A. (N. S.) 815, Holden v. Alton, 179 Ill. 318, 53 N. E. 556, Marshall & Bruce Co. v. Nashville, 109 Tenn. 495, 71 S. W. 815, and others, laws had been passed to the effect that contracts should not be let for city work to any but those employing union labor, and it was held that such laws were discriminatory, contrary to public policy, and tended to create and foster monopolies. The decisions in those cases have no pertinence or application to the facts alleged in this case. All complained of in this case is what might happen in case appellees exercise the police power and authority given them by law. If they had any application to this case, they would be in direct conflict with the Missouri case relied on by appellant. All the cited cases, as well as State v. Toole, 26 Mont. 22, 66 Pac. 496, 55 L. R. A. 648, 91 Am. St. Rep. 386, have reference to confining contracts for the state or public corporations to union labor people.

The case of Miller v. Des Moines was in connection with an ordinance, the validity of which was assailed, and which provided for letting contracts for printing for the city only to those who placed on the printed matter the "Allied Printing Trades Council Label." In pursuance of that ordinance the contract was awarded to a union printing company, although four nonunion companies made lower bids than the union company.

The facts showed that the nonunion companies were, with one possible exception, fully as efficient as the company to which the contract was awarded. The nonunion bids were not considered by the city council merely because they were nonunion, although they were financially responsible, had business facilities, office equipment, experience, and reliability. The court held that the rights of the people were disregarded, and said:

"City officials are charged with the collection and disbursement of vast sums of money, to which all the people must contribute in proportion to their estate, without regard to social position, political affiliation, religious belief, or economic theories."

It was held that such discrimination in favor of a class was detrimental to the masses, and could not be tolerated. There is nothing in that opinion to support the theory that, if, after a fair public trial, upon written charges, a city government should from the evidence determine that members of a certain organization were so controlled by their obligations as to threaten the public welfare and safety, in certain departments of city work, they could not be discharged on that ground. No case has ever held to such doctrine. On the other hand, it appears from an imperfect newspaper report that the Court of Civil Appeals at Amarillo, in a very recent decision, has held that firemen could be discharged on account of membership in a union, if proceeded against as required by the charter. McNatt v. Lawther, 223 S. W. 503.

There is a fundamental difference between the laws which seek to confine the right to contract to persons belonging to certain organizations, and permitting the untrammeled power to contract with any one, and the right to carry on a lawful business and use and enjoy property. In speaking of legislation in favor of a certain class the Supreme Court of the United States in Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385, has said:

"To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals."

That case was cited in the case of Railway v. Griffin, 106 Tex. 477, 171 S. W. 703, L. R. A. 1917B, 1108, which was carried by writ of error from this court to the Supreme Court of Texas. In that case, Griffin, an employé of the railway company, was discharged, a reason for such discharge as required by statute, being refused him, or a false one given him. He sued for and recovered damages. This court affirmed that judgment, but a writ of error being granted by the Supreme Court, the judgment was reversed, and

judgment rendered in favor of the railway company. The court held:

"The citizen has the liberty of contract as a natural right which is beyond the power of the government to take from him. The liberty to make contracts includes the corresponding right to refuse to accept a contract or to assume such liability as may be imposed. When Griffin entered the service of the railroad company for an indefinite time, the law reserved to him the right to quit the service at any time without cause or notice to the employés. The railroad had the corresponding right to discharge him at any time without cause or notice. The rights of the parties were mutual."

The law requiring the corporation to give a reason for the discharge was held unconstitutional.

[8] The right of a municipal corporation is the same in regard to its employés as is that of an individual or private corporation, and in case of the charter of San Antonio there is no attempt to destroy that right, but merely to prescribe the method in which it must be exercised. The charter has merely said that the right to employ and discharge or remove remains, but the removal cannot be made in two years unless charges are preferred in writing and a public hearing given thereon.

[9, 10] The exercise of the power of the removal of an officer or employé is essentially administrative or executive. The San Antonio commissioners do not constitute a court, but is an administrative body, and the power to remove officers is administrative power, to be used for the purpose of maintaining discipline and good order in the management of the business of the city. The fact that the charter requires a public trial does not alter the executive character of the municipal body. Dillon, Mun. Corp. § 466; Riggins v. Richards, 97 Tex. 229, 77 S. W. 946. On appeal from a decision by such executive board, if such appeal were permitted, the court could not review the exercise of executive discretion, but only in the absence of some essential formality, or apparent arbitrary, oppressive, and fraudulent action, and not upon the questions of fact, can the removal be inquired into by a court. Sections 467–484, Dill. Mun. Corp.

In the case of Riggins v. City of Waco, 100 Tex. 32, 93 S. W. 426, the court discussed the power of courts to review the action of municipal authorities in removing officers, and held:

"The power of removal is vested in that body by law, and no power of review, merely, is given to the courts. The law requiring that the removal should be for specified causes and after a hearing, the council was not empowered to deprive the mayor of his office arbitrarily or capriciously; and the courts, as incidental to their power to determine and enforce his right to the office, may inquire whether or not the council exceeded its lawful authority in the attempted removal, so that its action may be treated as a nullity, but beyond this have no rightful power over the subject. The most that could be asserted in favor of the power of the courts is that they may inquire whether or not charges were duly preferred, a hearing had, and evidence adduced tending to sustain them."

In this case, however, the courts are asked to review the anticipated or imaginary action of the commissioners' court, to substitute their opinion for one that may be possibly given by the commissioners, and deprive them of the right to determine in the statutory manner as to the removal of their employés whether such removal shall take place. As said by the Supreme Court in the case last cited:

"Should we say that he was guilty of nothing constituting ground for his removal, * * * we should simply be substituting our judgment for that of the council to whom the law intrusts the determination."

How much more reprehensible would it be for an appellate court to formulate an opinion founded on what the lawful municipal body might possibly do in discharge of their delegated authority. This court cannot, and will not presume to, take charge of the municipal affairs of the city of San Antonio, and substitute government by injunction for government by law.

The petition fails to show that any rights have been invaded, held by appellant, or any wrongs committed against it, and it has no authority to act as guardian for its membership and make their demands its demands. Each of them, as an American citizen, will find the courts open, and the judiciary ready to protect him against any invasion of his rights, whether personal or property rights.

[11, 12] The city of San Antonio and its officers cannot be estopped to perform their official duties by any ante-election promises or representations of the latter; and, if they could, appellant's allegations fail to indicate that appellant was in any manner misled to its harm. While it is alleged that belief in the sincerity of the promises made had caused the members to remain in the union, still that does not show that appellant has been placed in a worse position by the failure to carry out the promises, nor that any one has been injured by remaining in the union. The members can still withdraw if they so desire, just as they could have done if the promise had not been made. The promise could not and did not affect their membership in any manner, shape, or form, although it might have influenced their ballots at the coming election.

It is not alleged in the petition that membership in the union would not affect the loyalty of the members to the city, nor make them subject to orders that would interfere with the public service and the discharge at all times of their duties. It is not alleged

that they would not obey a strike order coming from the proper union authorities, nor that there would be no interference with the service if a member should at any time be removed or discharged from the service of the city; but the original petition merely states that firemen are about to be discharged because they are members of a union which subscribes "to principles, rules, and regulations promulgated or prescribed by the American Federation of Labor for the benefit and protection of its members," without indicating what the "principles, rules, and regulations" may be. Such rules and regulations may be deemed by the commissioners inimical to the interests of the city, and this court has no authority to anticipate that they will abuse their discretion should they entertain such an opinion and act upon it.

Judgment affirmed.