**POWERS v. SUNYLAN CO. et al. \***
No. 1145—5439

Commission of Appeals of Texas, Section B.
March 12, 1930.

Johnson & McConnell, of Houston, for plaintiff in error.

Niday & Carothers, of Houston, for defendants in error.

RYAN, J.

On June 28, 1926, plaintiff in error entered into contract with W. R. Archer, one of the defendants in error, for the purchase of a portion of block No. 5 in Sunylan, an addition to the city of Houston, in Harris county, for a total consideration of $3,950, of which $500 was paid in cash, and $3,450 agreed to be paid in monthly installments of not less than $39.-50, including interest.

The addition contains 58.76 acres of land, and at that time it was bald, open prairie, with no improvements. Powers, the purchaser, in company with a representative of the seller, went upon it, and selected a tract from a blueprint map, and made the cash payment at the time. The land contracted for faces Sunnyland street, which, agreed by all parties, was sixty feet wide, as indicated on the blueprint at the time, and is now represented by lots 11 to 16, inclusive, in block No. 5, lying between Lawson and Kenmare

avenues, according to the plat shown herewith.

On May 11, 1927, plaintiff in error filed suit in the district court of Harris county,

The seller agreed to lay out, grade, and shell in a substantial manner some nine streets, the grades to be lowered eight inches and covered with six inches of shell, sixteen feet wide in the middle of the streets and avenues. Standard cement sidewalks, to conform to ordinances of the city of Houston, were to be laid on certain streets so as to be in front of all lots, and sanitary sewer mains and water mains constructed so as to serve all lots and tracts sold in the addition. Fire plugs were to be placed in said addition for fire protection. The improvements were to be begun not later than September 1, 1926, and prosecuted with all due diligence and dispatch to completion.

Some time in January, 1927, plaintiff in error ascertained that right of way could not be procured sufficient to make Sunnyland street more than thirty feet wide, and that the improvements were not being made, and had not been prosecuted with diligence and dispatch; he demanded of Archer a return of the purchase money paid, and was assured the improvements would be made.

Tex., to rescind the executory contract, alleging fraud or mutual mistake as an inducement in its execution, for the return of the money he had paid thereon with interest, and in the alternative for damages laid at $1,854.17. He also pleaded fully the breach of contract on the part of defendants in not making the improvements, as provided in said contract.

It was admitted that W. R. Archer held the property for himself and in trust at the time for P. C. Rehrauer and Denton Cooley; afterwards the property was conveyed to Sunylan Company, a corporation, which assumed all the contracts and undertakings entered into in the name of W. R. Archer. Sunylan Company, Rehrauer, and Cooley were made parties defendant to the suit.

Defendants answer by general demurrer, general denial, and plea of abandonment of the contract by plaintiff; they also pleaded certain provisions of the contract as constituting an exclusive remedy; they admitted the delays and failure to carry out their contract in the making of said improve-

ments, but alleged that the delays were of such a character that they had no control over them.

The case was submitted on special issues, in answer to which the jury found that Archer, before plaintiff signed the contract in question, represented to him that Sunnyland street would be sixty feet wide; also that none of the other improvements mentioned in said contract, and to be done by the seller, were begun by the time prescribed in the contract, nor were they prosecuted with all diligence and dispatch. The jury also found that plaintiff, Powers, relied upon such representations in entering into said contract, that they were a material inducement to him, and he would not have entered into it but for them.

The court in its judgment found as an undisputed fact that, when the sale of the land in question was negotiated, and when the contract of sale was executed, there was a mutual mistake, in that the parties honestly believed Sunnyland street would be opened up sixty feet wide.

Based on such findings, the court "rescinded, canceled and annulled" the contract, and rendered judgment for plaintiff, Powers, against the defendants for the sum of money plaintiff had paid in on the contract, with interest and costs; this judgment was reversed by the Court of Civil Appeals [14 S.W.(2d) 894, 896], on the ground that the seller's obligations, although never carried out, were simply promises to do things in the future, and there was neither fraud nor mutual mistake because of misrepresentation, nor an honest mistake as to an existing fact.

The Court of Civil Appeals also held that the following provision of the contract constituted the exclusive remedy for its breach, viz.: "This contract is executed in triplicate and the original copy is to be placed in escrow with the Houston National Bank of Houston, Texas, where all payments on the same shall be made and the purchaser shall have the right, by notice in writing, delivered to the Bank to stop the payment by the Bank to Seller of any money thereafter paid into the Bank on this contract at any time the Purchaser finds that the Seller is not making the improvements in said action as specified in the foregoing paragraph, and until said specifications are complied with by the Seller," and under it the purchaser's only remedy was to notify the bank not to turn over to the seller the moneys paid to it by the purchaser.

It is uncontradicted that the other improvements have not been completed and Sunnyland street has not been made sixty feet wide.

The blueprint in evidence shows said street to have a width of sixty feet, thirty feet on either side of a dotted line in the center.

The Sisters of Charity of the Incarnate Word owned the land east of the dotted center line of Sunnyland street as said street is shown on said plat; a written agreement between them and W. R. Archer, dated July 24, 1926, recited that, in view of the fact that he, the owner of record of the Sunylan addition, had agreed with them to donate to the city of Houston one certain street sixty feet wide, thirty feet by Archer and thirty feet by the sisters, out of their respective properties, same lying parallel with the dividing line and running full length of said properties, said Archer agreed to construct said street at his own cost and expense in accordance with certain specifications therein set forth, under the city engineer's supervision and subject to his acceptance, when a warranty deed to the city of Houston should be executed by said parties with the provision that, so long as the city shall use and maintain the same for street purposes, the title shall be in the city, but should said street or any portion thereof be abandoned or closed, then it shall revert to the grantors, their heirs or assigns. It was further agreed that all said work should be completed not later than December 1, 1926, and said Archer should place the dividing fence on the proper line in its then same condition. Mr. Archer accordingly moved the sisters' fence back thirty feet, but failed to comply with his contract, whereupon the sisters replaced the fence back on the original line, canceled the contract, and decided they would not renew it or grant any other contract of any description for street purposes.

## Opinion.

Ordinarily, a rescission of contract will be denied where complainant has an adequate remedy affording a full relief at law, but where, as here, the contract is entirely executory, and there has been a breach in respect to material parts, and no supervening equities have arisen, a rescission may be had. Hausler v. Harding Gill Co. (Tex. Com. App.) 15 S.W.(2d) 548, 549; Mason v. Peterson (Tex. Com. App.) 250 S. W. 142. As said by Associate Justice Pierson in Russell v. Industrial Transportation Co., 113 Tex. 450, 251 S. W. 1034, 258 S. W. 462, 51 A. L. R. 1: "Texas pursues the equitable rule that 'whether misrepresentation is intentionally or innocently made, as far as the effect is concerned, it is the same and equally avoids the contract.'"

In the present case the making of the improvements, including the opening of Sunnyland street to a width of sixty feet in the manner and within the time stated, went to the root of the contract and was of its very essence. Archer's obligation to make them constituted dependent covenants.

Plaintiff testified that defendants and their agent represented to him that the improvements would be completed not later than early spring 1927. Sunnyland street, shown on the map to be sixty feet wide, together with the other streets, were to be laid out, graded, and shelled in a substantial manner, and that, upon the date of the trial, only two or three of these streets had any shell or gravel upon them, also that Sunnyland street, some ten blocks long, is no more than a winding wagon trail on the bald, open prairie, and that there is not one shovel of dirt moved out of the center of the street, which can never be substantially opened up, or made more than thirty feet wide, because of the sisters' refusal to donate the remaining thirty feet. Neither the sewer nor fire plugs were put in, and there was not a sidewalk in the addition.

The testimony conclusively showed, not only the failure to make the improvements, but such failure greatly depreciated the value of the property, and, without such agreement to make the improvements, Powers would not have made the contract.

Plaintiff in error has received no benefits, and therefore there are none to return, in order that the parties may be placed in status quo; it follows, therefore, that, upon the failure of defendant in error to carry out his part of the contract, and his inability to obtain a full width of sixty feet for Sunnyland street, all being essential subjects of the contract, and there being no supervening forbidding equities, plaintiff in error was entitled to a rescission of the contract and a return of the moneys he had paid in on it. Garrison v. Cooke, 96 Tex. 228, 72 S. W. 54, 61 L. R. A. 342, 97 Am. St. Rep. 906; Presidio Mining Co. v. Bullis, 68 Tex. 581, 4 S. W. 860; Houts v. Scharbauer, 46 Tex. Civ. App. 605, 103 S. W. 679.

■ The Court of Civil Appeals held that the contract provided an exclusive remedy by requiring Power to make all payments to the Houston National Bank, and giving him the right, by notice in writing delivered to the bank, to stop payment by it to the seller of any money thereafter paid on the contract at any time he finds that the seller is not making the improvements as specified and until the specifications are complied with by the seller.

We have seen that it is now beyond the power of Archer or his assignees to comply with his contract, particularly as to the widening of Sunnyland street to sixty feet; therefore the contention that, notwithstanding the breach of contract by Archer, he can require Powers to continue paying into the bank, and the bank indefinitely—perhaps perpetually—hold the money so paid in, awaiting compliance by Archer with specifications impossible for him to carry out, is without merit.

■ It is true that in certain instances a contractual remedy for an anticipated wrong or breach may be exclusive, but it must be a remedy affording adequate relief. Cases of that sort may grow out of breaches of warranties, such as Oltmanns v. Poland (Tex. Civ. App.) 142 S. W. 653, 654, cited by defendants in error, which cannot be considered as applicable here. We also find cases involving the sale of personal property for specific purposes which carry such warranties, but it is the warranty that gives binding force to the thing to be done in the event the warranty fails. If the warranty is withdrawn, the special remedy has no application. Buffalo Pitts Co. v. Alderdice (Tex. Civ. App.) 177 S. W. 1044.

Levy v. Tatum (Tex. Civ. App.) 43 S. w. 941, also cited by them, has no application here. That case simply holds that certain language there used in a contract between Mrs. Tatum and the railroad company, wherein the latter bound itself to build a depot and "maintain" an agent therein after it was built, admitted of parol evidence to ascertain the intention of the parties, and should have been submitted to the jury.

■ Said provision of the contract is not exclusive. It simply gave the purchaser the option of notifying the bank to not deliver to the defendants any more future payments, under conditions stated therein. It cannot be construed as taking away the purchaser's legal right to bring suit for a rescission of the contract upon the ground of fraud, mutual mistake, or a breach which went to its very essence. It makes no provision for reimbursing the purchaser, if the improvements specified in the contract are never made, and affords no remedy for recovery of the money paid before the breach occurred. The paragraph of the contract itself shows that the obligation to make the improvements goes to the very root of, is of the essence of, and premeates the entire contract.

■■ This contract was in the form prepared by defendants in error. In determining the meaning of the features of the contract under consideration, the court will apply well-known canons of construction, some of which are as follows:

In Magnolia Petroleum Co. v. Aiken (Tex. Civ. App.) 289 S. W. 152, 154, it is said: "Among the cardinal canons for the interpretation of contracts are that the language therein used will be construed most strongly against the party using it, and that an interpretation which makes the agreement fair and reasonable will be preferred to one which leads to harsh or unreasonable results"—citing Williston on Contract, §§ 620, 621.

In Kelsey v. Blackman (Tex. Civ. App.) 293 S. W. 199, a provision for forfeiture of money paid as liquidated damages was construed and held by the court to be a penalty, for the reason that to construe the same as

liquidated damages would lead to harsh and unreasonable results.

In Western Assur. Co. v. Hillyer-Deutsch-Jarratt Co. (Tex. Civ. App.) 167 S. W. 816–821, and in Somerset Pipe Line Co. v. Pioneer Oil & Ref. Co. (Tex. Civ. App.) 289 S. W. 155, 157, it is said: "A contract drawn by one party is always construed most strictly against such party."

The phrase "shall have the right" in said contract simply gave plaintiff in error the power, prerogative, option, or privilege of doing the thing there stated, but does not deprive him of his right to seek a remedy at law.

In Nunn v. Brillhart (Tex. Com. App.) 242 S. W. 459, 461, it is said: "When the provisions for return and rescission are merely permissive, it is generally held that they give the buyer an option to seek redress by that method, and his right to seek redress if he chooses under the ordinary rules of law is not in any way impaired thereby"—citing McGill v. Hall (Tex. Civ. App.) 26 S. W. 132; Birch v. Kavanaugh Knitting Co., 34 App. Div. 614, 54 N. Y. S. 449, affirmed 165 N. Y. 617, 59 N. E. 1119; Gaar, Scott & Co. v. Patterson, 65 Minn, 449, 68 N. W. 69; Shupe v. Collender, 56 Conn. 489, 15 A. 405, 1 L. R. A. 339. The same case also cites authorities holding the buyer may waive the special provision, retain the article, and sue for damages for breach of the guaranty.

In Mendenhall v. West Chester & P. R. Co., 36 Pa. 145, note, it is held: "The fact that a contract by express provision grants a particular remedy does not exclude other remedies which the law annexes to the contract, unless so inconsistent as plainly to imply such exclusion."

Applying the principles of construction announced in the foregoing decisions to that provision of the contract under consideration, we conclude that this feature of the contract will be construed most strongly against defendants in error, since they prepared it. No construction will be placed thereon which will lead to harsh or unreasonable results; its terms are plain and unambiguous; and its construction is for the court. The consideration contracted to be paid for the property in question by plaintiff in error was based upon the improvements being made in the manner and within the time stipulated.

The only fair and reasonable construction which can be placed upon this feature of the contract is that it simply gives the purchaser the power, privilege, prerogative, or option to request the bank in writing not to turn over the purchase money to the sellers, which is permissive and not mandatory, and did not deprive plaintiff in error of his ordinary remedies at law.

We recommend that the judgment of the Court of Civil Appeals be reversed and that of the district court be affirmed.

CURETON, C. J.

The judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.