**WILBURN**

v.

**MISSOURI–KANSAS–TEXAS R. CO. OF TEXAS.**

No. 14754.

Court of Civil Appeals of Texas. Dallas.

Jan. 22, 1954.

On Rehearing May 14, 1954.

Johannes & Kelsoe and Paul M. Thorp, Dallas, for appellant.

G. H. Penland, M. E. Clinton and Touchstone, Watson & Watson and O. O. Touchstone, Dallas, for appellee.

YOUNG, Justice.

The suit in trial court was for damages following an alleged wrongful discharge by his former employer, a railroad company referred to herein as defendant or appellee; the latter contending by plea in abatement that the matters in controversy involved solely a construction or interpretation of the Collective Bargaining Agreement in existence at all material dates between plaintiff through his Labor Union and defendant Railway, over which the National Railroad Adjustment Board had exclusive jurisdiction, 45 U.S.C.A. § 153. After argument on the pleading, defendant's said plea was sustained by the court and cause accordingly dismissed for want of jurisdiction, with this appeal in consequence.

In so far as possible, the facts reflected in pleading of the respective parties will be summarized. Plaintiff first alleged that:

"Plaintiff would show that on or about August 11, 1951, he reported to the roundhouse of Defendant in Dallas, Texas, to resume his duties as a Fireman for Defendant. There he was told it would be necessary for him to obtain a physical examination and was told to see Dr. Mark Welsh to get his examination. Plaintiff shows the Court that on or after August 11, 1951, and before August 16, 1951, he reported to Dr. Welsh at his office in Dallas, Texas, and that Dr. Welsh then and there told Plaintiff that he would not allow Plaintiff to go back to work in any capacity whatsoever for the said Defendant." Continuing, plaintiff alleged that in accordance with the Collective Bargaining Agreement between the railroad and his former Union, he requested in writing through his Union representative that a further examination be given him, to which procedure he was entitled as a matter of right from the adverse finding of Dr. Welsh; such re-examination as contained in the Bargaining Agreement providing for a Board of Doctors comprised of his own representative, a doctor selected by the Railroad, and in case no agreement be reached by the two, a neutral doctor of recognized standing was to be agreed upon by the partisan doctors; the Board then proceeding to affirm or disaffirm the original finding of disqualification for physical disability; and if the initial disqualification be found improper, a re-instatement would follow with back pay. Plaintiff then alleged a fulfillment of all requirements of the Agreement entitling him to the further examination, his willingness to abide by and perform the contract, and tender of performance; that at such point defendant had wrongfully and unqualifiedly refused to comply with its part of the bargaining contract, or to be a party to the mentioned examination; that is, to appoint a member of the Board of Doctors or do anything further in ascertainment of plaintiff's true physical condition; this wrongful and arbitrary conduct constituting a breach of the agreement and resulting in his wrongful discharge on or about August 15, 1951.

Plaintiff alleged alternatively that defendant's said refusal to provide a re-ex-

amination was also a breach of the Agreement, Rule 81(a), which reads: "(a) No fireman or hostler will be suspended or discharged or unfavorable entries made against his record without just and sufficient cause and without being given an investigation; and in case a fireman or hostler is taken off his engine or run, he shall be given a hearing within five days from the time he is taken off. * * *" Plaintiff's suit was for damages assertedly arising from a breach of the employment contract as distinguished from an action for specific performance; his petition refuting any assumption or theory of an existent employer-employee relationship.

Defendant's amended plea in abatement alleged in part that: "Plaintiff, H. I. Wilburn, entered the service of the defendant, Missouri-Kansas-Texas Railroad Company of Texas, as a fireman, on March 17, 1945, after passing a physical examination on February 12, 1945. He was removed from service on August 30, 1945, due to reduction in force. He was re-employed as a fireman on June 10, 1948, after passing a physical examination on June 9, 1948. He was relieved from active duty in October, 1949, at his request, on account of illness. He received medical treatment in November and December, 1949, and in January, 1950. He was re-examined in January, 1950, under said defendant's regulations and requirements governing physical examinations, Form 296, of July 1, 1944, and, as a result of such re-examination was disqualified and removed from service as a fireman in February, 1950. Notice of such disqualification and removal was given plaintiff, H. I. Wilburn, in February, 1950." As in denial of plaintiff's charges of breach of the bargaining contract, defendant's affirmative allegations appear to be: (1) That the agreement providing for appeal to a medical Board from an adverse physical examination by the Company doctor did not apply to plaintiff, said agreement becoming effective April 1, 1950, whereas the disqualification of plaintiff because of physical disability and consequent removal from service occurred in February, 1950; furthermore, that plaintiff was not entitled to

the benefits of said agreement because no request for further examination, as provided therein, was made in writing by plaintiff or his representative within thirty days after notice of said disqualification and removal; and (2) that the regulations of defendant Company governing physical examination, Form 296, of July 1, 1944, were in effect, and applicable to plaintiff, at time he was disqualified for service, same providing in part: "Where an employe feels that he has been unjustly denied return to service on account of physical examination he will have the right to another examination with his representative and physician of his choice present"; that plaintiff had never protested his disqualification and removal from service in February 1950, and has never requested the additional examination provided for in the regulation just quoted; the whole effect of defensive allegations being that, if the Company be mistaken in the foregoing procedure, the National Railroad Adjustment Board, First Division, is the only body authorized to determine whether plaintiff was entitled to a Board re-examination, and to issue the "proper directive in regard thereto in the event it is determined that a re-examination has been unjustifiably refused by the defendant." Appellee also pled that Rule 81(a) interposed by plaintiff related solely to disciplinary measures involving violation of railroad regulations and was never intended to apply to a removal from service for physical disability. Plaintiff answered defendant's plea in abatement in supplemental pleading consisting of exceptions, denials, and further matters of fact. Here it should be noted that after judgment dismissing the cause, each party filed a motion for findings and conclusions of law; defendant's findings being approved except that the court refused to find as a matter of law "that plaintiff's cause of action is not one for wrongful discharge."

Appellant's points of appeal are sufficiently reflected in the following: The court's error (point 2) "in refusing to conclude that appellant's original petition on its face showed as a matter of law that it was an action for wrongful discharge";

(point 3) "in concluding as a matter of law that appellant's petition on its face required such construction, interpretation and application of the Collective Bargaining Agreement between the Railroad and appellant's former Union so as to deprive the District Court of jurisdiction to hear such cause", perforce of the Railway Labor Act, Title 45 U.S.C.A. § 151 et seq. In answer thereto, defensive counter points 1 and 2 may be stated: (1) "Plaintiff's pleading asserted a grievance or complaint over which the National Railroad Labor Adjustment Board has exclusive original jurisdiction; therefore, the action of the trial court in dismissing plaintiff's cause for want of jurisdiction was proper. (2) Plaintiff's pleading reflecting on its face that the alleged grievance or cause was not one for wrongful discharge, the trial court was correct in refusing to sustain plaintiff's contention that such action was one for wrongful discharge."

It is well settled that the Railway Labor Act, 45 U.S.C.A. § 151 et seq., was passed by Congress for the express purpose of preempting the field in the settlement of constant and recurring disputes or grievances arising between employees and railroads over the rights of workers; expressed in section 151a subd. (5), as follows: "To provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions. May 20, 1926, c. 347, § 2, as added June 21, 1934, c. 691, § 2, 48 Stat. 1186." To effectuate such purpose and vest exclusive jurisdiction in a proper tribunal, Congress proceeded to create the National Railroad Adjustment Board for settlement of these disputes and grievances; 45 U.S.C.A. § 153(i), First Division, reading: "(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

It has been uniformly held that the Board's jurisdiction over interpretation and construction of existing railroad-employee agreements is exclusive. It was observed in Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 579 and 580, 94 L.Ed. 795: " * * * The Act thus represents a considered effort on the part of Congress to provide effective and desirable administrative remedies for adjustment of railroad-employee disputes growing out of the interpretation of existing agreements. The Adjustment Board is well equipped to exercise its congressionally imposed functions. Its members understand railroad problems and speak the railroad jargon. Long and varied experiences have added to the Board's initial qualifications. Precedents established by it, while not necessarily binding, provide opportunities for a desirable degree of uniformity in the interpretation of agreements throughout the nation's railway systems." See also Order of Ry. Conductors of America v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318, 323; Order of Ry. Conductors of America v. Southern Ry. Co., 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811; Brotherhood of R. R. Trainmen v. Texas & P. Ry. Co., Tex.Civ. App., 231 S.W.2d 451.

However, the leading authorities relied on by appellant Moore v. Illinois Cent. R. Co., 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089; Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 do not construe the Railway Labor Act as excluding the pursuit by a claimant of his remedy at common law if the suit be in fact one of wrongful discharge following the employer's alleged breach of a collective bargaining agreement. "A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not

involve questions of future relations between the railroad and its other employees. * * *" Slocum v. Delaware, L. & W. R. Co., supra. "The result is that, whereas, under the Railway Labor Act, the Adjustment Board has exclusive jurisdiction to adjust grievances and jurisdictional disputes of the type involved in the Slocum case, that Board does not have like exclusive jurisdiction over the claim of an employee that he has been unlawfully discharged. Such employee may proceed either in accordance with the administrative procedures prescribed in his employment contract or he may resort to his action at law for alleged unlawful discharge if the state courts recognize such a claim. Where the applicable law permits his recovery of damages without showing his prior exhaustion of his administrative remedies, he may so recover, as he did in the Moore litigation, supra, under Mississippi law." Transcontinental & Western Air v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 910, 97 L.Ed. 1325. If the latter, or common law course be pursued, our own Supreme Court will follow the principles of the Moore and Slocum cases, supra, where "there is nothing in the agreement that requires the employee to seek administrative relief as a condition precedent to his suit in court * * *." Texas & N. O. R. Co. v. McCombs, 143 Tex. 257, 183 S.W.2d 716, 719. Defendant on the other hand vigorously insists that the instant action, being, on face of the petition, merely one regarding the proper interpretation of its railroad-employee agreement, jurisdiction of the National Railroad Adjustment Board is exclusive.

■ It may be, upon introduction of evidence, that defendant has properly analyzed the issues thus raised; but at this juncture (without evidence at all) we are required to view the case pleaded in the aspect most favorable to plaintiff. Priest v. Chicago, R. I. &. P. R. R., 8 Cir., 189 F.2d 813; Turman Oil Co. v. Roberts, Tex. Civ.App., 96 S.W.2d 724 (writ ref.). Wilburn denominates his severance from the service as a wrongful discharge; defendant, as simply a removal resulting from "disqualification because of physical disabil-

ity." But if the latter, and whether the same is tantamount to a wrongful discharge, we cannot conclusively determine on basis of the pleading alone. The sustaining of a plea in abatement without hearing any evidence thereon is equivalent to the sustaining of a general demurrer. Turman Oil Co. v. Roberts, supra. "Mere averment of facts in plea in abatement, without proof thereof, is insufficient unless truth of matters alleged appears from plaintiff's petition." Hall v. McKee, Tex.Civ.App., 179 S.W.2d 590, 591 (syl. 6); Longoria v. Alamia, 149 Tex. 234, 230 S.W.2d 1022.

Cause reversed and remanded to trial court for further proceeding.

## On Rehearing

On further consideration of the record we have concluded that lack of jurisdiction of appellant's alleged cause of action appears on face of his pleading as supplemented; with result that appellee's motion for rehearing must be sustained, the prior order of reversal set aside, thereby affirming the judgment under review.

■ The following general statement of principles has bearing on the entire controversy as we now view it: (1) Where the parties to a contract agree on the remedy accruing on a breach thereof, the remedy agreed upon is exclusive. Buffalo Pitts Co. v. Alderdice, Tex.Civ.App., 177 S.W. 1044 (writ ref.). The given remedy, of course, must afford adequate relief. Powers v. Sunylan Co., Tex.Com.App., 25 S.W.2d 808. "A contract will not be construed to limit the remedial rights of the parties unless such an intention is clear. But when parties stipulate in a contract what the consequences of a breach of the agreement shall be, such stipulation if reasonable is controlling and excludes other consequences." 12 Am.Jur., Contracts, sec. 458, p. 1042.

■ (2) "* * * 'Collective labor agreement' and 'trade agreement' are terms used to describe a bargaining agreement as to wages and conditions of work, entered into by groups of employees, usually organized into a brotherhood or union, on one

side, and groups of employers, or corporations, such as railroad companies, on the other side." 31 Am.Jur. 872; referred to in Federal Statutes, 45 U.S.C.A. § 152(1–6), as an agreement "concerning rates of pay, rules, and working conditions" as distinguished from the individual contracts of employment thereunder, referred to, 45 U.S.C.A. § 152(8), as "the contract of employment between the carrier and each employee". Such an agreement may contain many provisions relative to conditions under which labor is to be performed, but is not in itself a contract of employment. "It is only an agreement as to terms on which contracts of employment may be satisfactorily made and carried out. It is a mutual general offer, to be closed by specific acceptance. When negotiated by representatives of an organization, it is called collective bargaining, but ordinarily the laws of the order do not require the members to serve under it, but only that if they serve they will do so according to its terms." Rentschler v. Missouri Pac. R. Co., 126 Neb. 493, 253 N.W. 694, 698, 95 A.L.R. 1. "The contracts of employment arise when individual men present themselves, are examined touching their knowledge of the railroad rules and other things, and stand the required physical examinations, and are severally accepted as employees. * * * In the absence of any special agreement othervise, every employment may be presumed to be on the basis of the collective agreement and to adopt its terms. * * * When the collective agreement, tacitly or expressly, is taken as supplying any or all of the terms of the service of a particular employee, it still is not the contract, but only a standard to which the parties have referred in making their parol contract. * * *" Illinois Cent. R. Co. v. Moore, 5 Cir., 112 F.2d 959, 964; reversed by U. S. Sup. Ct. on other grounds (Limitation), 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089.

▇▇ (3) The matter of physical fitness of a railroad employee to discharge his required duties is of vital concern to the employer, fellow-employees, and the public; and adequate rules for physical examination of employees (such as appellant here relies

upon) are properly a part of the collective agreement. Minneapolis, St. P., etc., R. Co. v. Rock., 279 U.S. 410, 49 S.Ct. 363, 73 L.Ed. 766.

(4) Appellant's tenure of employment would have been at will except for Art. 81 of the quoted contract, precluding a suspension or discharge "without just and sufficient cause." San Antonio Fire Fighters' Local Union No. 84 v. Bell, Tex.Civ.App., 223 S.W. 506. Here, plaintiff does not deny that the full text of Art. 81 is contained in defendant's plea in abatement, and reads: "(a) No fireman or hostler will be suspended or discharged or unfavorable entries made against his record without just and sufficient cause and without being given an investigation; and in case a fireman or hostler is taken off his engine or run, he shall be given a hearing within five days from the time he is taken off. When a fireman or hostler is required to attend investigations, he will be given sufficient notice in advance to have his local or General Chairman or some engineman of his choice present, who will be permitted to question all witnesses in the case. Where stenographic notes are taken, enginemen will be furnished with a copy of all papers. (c) Every fireman or hostler shall at the end of his investigation be informed whether or not he is guilty. (d) When a fireman or hostler is brought to trial for any offense, the charges shall be specific, he shall have the right to produce witnesses to testify in his defense at such investigation and to examine all evidence papers concerning his case, and to question all persons giving evidence in his case in person or through his Local or General Chairman or some engineman of his choice. (e) An engineman who feels that he has been unjustly dealt with will have the right to appeal to his superior officer, through his Local or General Chairman. If found not guilty, he shall be reinstated, or discipline corrected and be paid for time lost."

▇▇ When the pleaded sections of appellant's collective agreement are examined, it is manifest that wholly unrelated subjects are dealt with; one having to do with the

employee's physical condition; the other with his discharge or suspension on just and sufficient grounds as authorized by Rule 81; and that it is with reference to disciplinary action of the latter type that the claimant has been accorded an election of remedies. Such was the subject matter of Moore v. Illinois Cent. Ry., 312 U.S. 630, 61 S.Ct. 754, thereby distinguishing it from the later case of Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 580, where the court had occasion to say: "Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases." Under Form 296 of the bargaining contract (Examinations) on the other hand, a continuance of the employment is contemplated, providing a method for determination of physical fitness in such connection. Otherwise stated, a claimed violation by defendant of the provisions of Form 296 bears no such relationship to the terms of Rule 81 providing against a discharge or suspension without good and sufficient cause, as would justify a claim for breach of the entire contract of employment. At most, there would result merely a refusal of defendant Company to arbitrate, constituting a grievance referable to the National Railroad Adjustment Board in accordance with the terms and intendments of the collective agreement, and by which appellant was bound.

 Brief notice should be taken of the argument of respective counsel on this controlling issue of law. Appellee correct-ly states, we think, that appellant's only remedy at common law would be by mandamus to compel a re-examination, in which connection the district court would be wholly lacking in the alternative authority of making any determination concerning plaintiff's physical efficiency, or to issue a directive pursuant thereto for reinstatement and back pay. Appellant counters by invoking the well settled rule that the railroad company cannot stand upon the bargaining agreement which it has refused to perform, as a defense to his action for breach of the contract based on such refusal; citing Mallehan v. Texas & P. R. Co., Tex.Civ.App., 87 S.W.2d 771; Moore County Carbon Co. v. Whitten, Tex.Civ. App., 140 S.W.2d 880 (wrongful discharge cases involving disciplinary measures, as we view them). Also it is argued that in said common law action the trial court always has jurisdiction to determine a litigant's physical condition by competent evidence, medical or otherwise. Applicability of appellant's invoked rule must turn on the nature of defendant's alleged breach or renunciation of contract, and of whether the bargaining agreement itself provides against the contingency complained of. If it does, that remedy must be pursued to the exclusion of all others. Appellee is an interstate carrier. "Under principle that right of Congress to regulate interstate commerce is superior to right of parties to contract with relation thereto, federal statute creating National Railway Adjustment Board *became part of all contracts by railroad companies with their employees* subsisting at time of its effective date. Railway Labor Act, § 3 [subd. 1] (i), as amended, 45 U.S.C.A. § 153 [subd. 1] (i)." (Emphasis ours.) Mansell v. Texas & P. Ry. Co., 135 Tex. 31, 137 S.W.2d 997, syl. 1.[1]

---

1. If we may be permitted to consider the supplemental petition of plaintiff, it is evident that the controversy between the parties relates to their basic agreement of bargaining; each claiming controlling effect of differently dated and worded provisions—obviously a matter for interpretation by the National Railroad Adjustment Board whose "members understand railroad problems and speak the railroad jargon." It is thus seen that the alleged breach of contract is not absolute and unequivocal, which is necessary to excusing performance by the party aggrieved. If such were not the law, says the Court in Armstrong v. Ross, 61 W.Va. 38, 55 S.E. 895, 899, "it would be a dangerous thing to stand upon a con-

Appellant's thesis that the cause of action alleged entitled him to a common law determination of whether or not on August 11, 1951 he was "physically fit and able to perform the duties of a fireman," is well answered by appellee in the following: That such argument "ignores the fundamental distinction which exists in this cause; that the court is dealing with the express provisions of a Collective Bargaining Agreement, which is executed under an act of Congress in the public interest. It is to the public interest, as well as to the interest of other employees of the defendant, that the physical capacity for discharging the duties of the employment be maintained in accordance with the administrative procedure which has been provided for in the contract between the Brotherhood and the defendant. Since such administrative procedure requires a condition precedent and prescribes the remedy for any breach, the plaintiff is bound to pursue such contract in the appropriate tribunal. Where determination has been left to an administrative body by statute (and the contract in this case was executed pursuant to a federal statute), it is not the province of courts to substitute their judgment or encroach upon the administrative body. Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301; Securities and Exchange Comm. v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626." And quite relevant to the instant situation, appellee further points out on rehearing: "There is a wide difference between a discharge because of affirmative action and a disqualification on account of physical disability as expressed in the contract which has been plead by plaintiff. Under its provisions there could be no discharge on account of physical disqualification and therefore the specific remedy

was provided, namely, reinstatement to the position which the employee held in the event the physical disqualification was improperly made. It was never intended that a court should determine that physical disqualification was improperly made by virtue of the specific provision for arbitration by qualified arbitrators in the event physical disqualification occurred."

The judgment under review is accordingly affirmed without prejudice to the right of plaintiff to present any grievance or dispute arising under his pleadings to the National Railroad Adjustment Board.[2]

troverted construction of a contract. Every man would act at his peril in such cases, and be subjected to the alternative of acquiescing in the interpretation adopted by his opponent, or putting to hazard his entire interest in the contract. The courts have never imposed terms so harsh, or burdens of such weight. It would amount to a virtual denial of the right to insist upon an honest, but erroneous, interpretation."

2. Attached to appellee's motion to dismiss appeal for want of jurisdiction, are papers reflecting a decision by a special Board of Adjustment of date Feb. 15, 1954, adverse to the claim of Wilburn; which agency is purportedly acting under provisions of the National Railroad Adjustment Board. This Court can do no more than take notice of such subsequent proceeding in connection with the overruling of said motion of appellee.