AETNA LIFE AND CASUALTY COMPANY, Petitioners,

v.

Raymond GUNN et al., Respondents.

No. C-703.

Supreme Court of Texas.

Feb. 17, 1982.

Rehearing Denied March 24, 1982.

Bailey, Williams, Westfall, Lee & Fowler, William Dixon Wiles and Kevin J. Keith, Dallas, for petitioners.

McMullen & Porter, Stephen C. Porter and Waylon E. McMullen, Dallas, for respondents.

WALLACE, Justice.

This is a suit by Raymond Gunn, individually and as next friend of Christopher Gunn, a minor, (Gunn) to collect the proceeds of a group life insurance and a group accidental death and disability policy upon the death of Phyllis Gunn. The policies were issued by Aetna Life and Casualty Company (Aetna). Raymond Gunn is the father of Phyllis Gunn and Christopher is her son. The trial court rendered summary judgment for Aetna. The court of civil appeals reversed and remanded. (Tex.Civ. App.—Dallas, 1981). We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

On September 2, 1976, Phyllis Gunn was interviewed for employment as a file clerk by Fisher Scientific Company (Fisher). On September 3, she took a physical examination and executed the following documents: (1) a W–4 Employee's Withholding Allowance Certificate; (2) an Aetna Life and Casualty Insurance card; and (3) an employment contract with Fisher. The day Phyllis Gunn commenced performing the duties of a file clerk and the first day for which she was paid was September 7. She was compensated at an hourly rate. On December 5, she was injured in an automobile accident and died from those injuries on December 6.

By execution of the insurance card on September 3, Phyllis Gunn elected to be covered by the group insurance for Fisher employees provided by Aetna. This coverage included life as well as accidental death and disability insurance. The group policies issued by Aetna provided that each employee shall become eligible for coverage on the date in which he completes three months of "continuous service." The parties stipulated that should it be determined that Phyllis Gunn commenced "continuous service" on September 3, 1976, the date she signed the employment documents, then she satisfied the eligibility requirements, but, if it should be determined that Phyllis Gunn commenced continuous service on September 7, 1976, her first day of work, and first day of paid compensation, then she did not satisfy the eligibility requirements.[1]

The court of civil appeals found that the term "three months of continuous service" was ambiguous because it is not ascertainable from the language used the meaning to be given the word "service." Having found this ambiguity, the court held that the policy was to be construed in such a way as to provide coverage.

 We hold that the court of civil appeals erred in finding the policy was ambiguous. The rule for determining if a contract is ambiguous was set out by this

1. September 7, 1976 to December 6, 1976 constitutes three months. However it was stipulated by the parties that December 3, was the last day actually worked by Phyllis Gunn and the insurance policy provided that "... any employee who is both disabled (i.e., ill or injured) and away from work on the date employee coverage is to become effective shall not be insured until he actually returns to work on a full-time basis."

Court in *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex.1968). Where, after considering the wording of the instrument a question relating to its meaning is presented, the Court is to take the wording of the instrument, consider the same in light of the surrounding circumstances, apply the pertinent rules of construction thereto and thus settle the meaning of the contract. If, in light of the surrounding circumstances, the language of the contract appears to be capable of only a single meaning, the Court can then confine itself to the writing. *Sun Oil Co. (Delaware) v. Martha Foster Madeley, et al.*, 626 S.W.2d 726 (Tex.1981).

In applying this rule to our case we look to the facts as they existed at the time Phyllis Gunn executed the employment documents, as well as the documents themselves. Phyllis Gunn was an eighteen year old woman who applied for and was employed as a file clerk. Her previous employment as shown by her employment application consisted of a temporary night job as "clean-up, cashier and cook" for *What-a-Burger*, at $2.50 per hour, and as a "temporary cashier" for *Treasury* at $2.18 per hour during the Christmas holidays.

Phyllis Gunn signed the insurance card authorizing payroll deductions for the insurance in question. The space on the card for employment date shows 9–7–76. There is no contention in the record that this space was not filled in by Phyllis Gunn. She performed no duties as a file clerk on September 3, but commenced her duties on September 7.

■ Gunn contends that service began on September 3, because the employment contract provided that as an employee Phyllis Gunn would: (1) transfer and assign to Fisher any inventions or improvements conceived or improved by her during her period of employment by Fisher; (2) would .not divulge confidential information; and (3) would not engage in any other employment which would interfere with her duties for Fisher. Gunn contends these obligations gave her the status of employee as of the date of signing the agreement and there-

fore "service" started as of that date. Considering the above cited circumstances surrounding the execution of the documents, we do not find it reasonable that either party contemplated that Phyllis Gunn would: (1) invent or receive a patent; (2) divulge any confidential information which she did not yet have access to; or (3) acquire conflicting employment. This appears even more unreasonable in light of the fact that she signed the contract on September 3, and was to report to work *after* the Labor Day weekend on September 7. Therefore we do not consider it reasonable that a promise to forbear from doing these three things constituted commencement of "service" by Phyllis Gunn.

We find the policy to be unambiguous and thus construe the policy by its four corners, as opposed to construing it to provide coverage as Gunn contends and as the court of civil appeals did. We find that the only reasonable meaning of the term "service" used in the policy to mean the regular work to be performed by Phyllis Gunn as a file clerk for which she was paid an hourly wage. This work commenced on September 7, 1976, and therefore continuous service commenced as of that date.

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.

RAY, Justice, dissenting.

I respectfully dissent.

I would affirm the judgment of the court of civil appeals for the reasons stated in the opinion of that court.