Louis A. FRITZ, et al, Appellants,

v.

TEJAS GAS CORP., et al, Appellees.

No. 1911.

Court of Appeals of Texas,
Corpus Christi.

Aug. 26, 1982.

Rehearing Denied Sept. 23, 1982.

Charles R. Porter, Jr., Porter, Gonzalez & Rogers, Corpus Christi, for appellants.

C. Edwin Prichard, Jr., Prichard, Peeler, Cartwright & Hall, Corpus Christi, George W. Lederer, Jr., The Woodlands, for appellees.

Before BISSETT, UTTER and KENNEDY, JJ.

## OPINION

BISSETT, Justice.

Our former opinion in this case, dated June 30, 1982, is withdrawn and the following is substituted therefor.

Louis A. Fritz and William K. Anderson filed suit against Tejas Gas Corporation (hereinafter "Tejas") alleging the breach of a written contract entitled "Net Revenue Interest Agreement." Delores Fritz, the former wife of Fritz, intervened as a plaintiff. Southwestern Gas Pipeline, Inc. (hereinafter Southwestern) intervened as a defendant. Following a trial without a jury, a take nothing judgment was rendered against Louis A. Fritz, William K. Anderson and Delores Fritz (hereinafter "the appellants"). We affirm.

Twenty-six points of error are raised by the appellants in their brief. However, the dispositive issue on appeal is whether the trial court correctly construed paragraph V of the Net Revenue Interest Agreement.

Prior to April 29, 1977, a natural gas pipeline known as Monco Transmission System (hereinafter "Monco") was jointly owned, in equal shares, by Consolidated Gas Management, Inc., (hereinafter "Consolidated"), and Peninsula Pipeline Company, Inc. (hereinafter "Peninsula"). Consolidated was owned in equal shares by the appellants and has subsequently been dissolved and its assets distributed to the appellants. On April 29, 1977, Tejas purchased the interests of Consolidated and Gas Management, and simultaneously conveyed a portion of those newly acquired interests to Peninsula. As a result of this transaction, Tejas and Peninsula each owned an undivided 50% interest in Monco.

The transaction between Tejas and Consolidated consisted of three instruments, namely, a "Contract of Purchase and Sale," an "Assignment and Bill of Sale," and a "Net Revenue Interest Agreement" (hereinafter "NRIA"). The consideration paid by Tejas to Consolidated was $127,000.00 in cash, the assumption of the balance of approximately $373,000.00 on a promissory note theretofore executed by Consolidated, and the execution of the NRIA, which provided for varying percentages of revenue from the operation of Monco to be paid to Consolidated over a twenty-year period or until Consolidated received $500,000.00, whichever occurred first.

Paragraph "V" of the NRIA contained the following provision regarding assignments by Tejas:

"ASSIGNMENT OF INTEREST

Contemporaneously with the execution hereof, the parties hereto are likewise

executing a Contract of Purchase and Sale, providing for, *inter alia,* the assignment of Consolidated's interest in the pipeline system as herein defined to Tejas. It is expressly understood and agreed by the parties hereto, that in the event Tejas shall at any time sell, assign or convey all or any portion of such interest in the pipeline system thus acquired, except for twenty-five percent (25%) of such interest to Peninsula Pipeline Corporation, then Tejas shall, not later than ten (10) days subsequent to such sale, assignment or conveyance, pay to Consolidated in cash the sum of five hundred thousand dollars ($500,000.00) plus accrued interest less the aggregate of principal payments made pursuant to the terms hereof."

Later, Tejas entered into a joint venture agreement with Southwestern (which had acquired Peninsula's undivided 50% interest in Monco). Pursuant to the joint venture agreement, Tejas and Southwestern assigned all their interest in Monco to this joint venture, which was denominated the "Tejas-Southwestern Pipeline Company." The sole asset of the joint venture was its 100% interest in Monco. While this joint venture was in existence, Tejas assigned an undivided 35% of all its assets, including 35% of its 50% interest in the joint venture, to Mitchell Energy Two, Inc. (hereinafter "Mitchell"), leaving Tejas with an undivided 32.5% interest in the joint venture. Upon learning of the assignment to Mitchell, the appellants demanded payment from Tejas of $500,000.00, which, according to them, was due them under the express provisions of the above-quoted paragraph V of the NRIA. Tejas refused to comply with the appellants' demand and this suit followed.

The appellants do not contend that Tejas' assignment to the joint venture, hereinbefore noted, activated the lump sum provision of paragraph V of the NRIA. They do contend, however, that the assignment by Tejas to Mitchell did activate such provision.

The trial judge filed numerous Findings of Fact and Conclusions of Law. In his findings of fact, among the findings, he found: 1) that only an undivided 25% interest in Monco was subject to the lump sum provision in paragraph V; 2) that such percentage interest was physically unidentifiable; 3) and that after the assignment to Mitchell, Tejas retained an undivided 32.5% interest in the Tejas-Southwestern Pipeline Company joint venture which owned 100% of Monco. In his Conclusions of Law, the trial judge, among other conclusions, concluded: 1) that subsequent to the assignment from Tejas to Mitchell, Tejas still owned an undivided interest of the joint venture entitled Tejas-Southwestern Pipeline Company, which in turn owned 100% of the Monco system; 2) that the 25% interest in the Monco system obtained by Tejas from Consolidated is physically unidentifiable; 3) that there was insufficient evidence presented to show that the undivided 32.5% interest retained by Tejas did not include the undivided 25% interest subject to the lump sum provision; and, 4) that the appellants failed to prove by a preponderance of the evidence that Tejas assigned any interest covered by the NRIA to Mitchell. Accordingly, the trial court denied the relief requested by the appellants.

In their first point of error, the appellants contend that the trial court erred in failing to conclude that Tejas sold a portion of Monco described in the NRIA to Mitchell. In their second point, appellants claim that the trial court's conclusion "that there was insufficient evidence presented, that the 32.5% undivided interest retained by Tejas did not include the 25% undivided interest obtained from Consolidated" is contrary to the undisputed evidence, and, in the alternative, is contrary to the great weight and preponderance of the evidence. In their third point, the appellants say that the trial court erred in concluding "that the plaintiffs and intervenor (appellants) failed to prove by a preponderance of the evidence that Tejas (appellee) conveyed or assigned to Mitchell Energy Two, Inc., any share covered by the Net Revenue Interest Agreement," in that such conclusion is con-

trary to the undisputed evidence, and, in the alternative, is contrary to the great weight and preponderance of the evidence. We consider the first, second and third points of error to be "no evidence," and, in the alternative, "against the great weight and preponderance of the evidence" points. Accordingly, in reviewing those points, we follow the well established standards set out in *Garza v. Alviar,* 395 S.W.2d 821 (Tex. 1965), and in *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

In essence, the appellants, in their first three points of error, allege that the trial court erred in concluding that no part of the Monco system subject to paragraph V was assigned by Tejas to Mitchell. Their sole contention in support of this allegation is that, notwithstanding what the trial court found, the parties intended for Tejas' entire undivided 50% interest in Monco to be subject to paragraph V, and therefore the assignment to Mitchell which left Tejas with only an undivided 32.5% interest in Monco, necessarily activated the lump sum provision in paragraph V. The appellants present several arguments in support of this contention. We must, therefore, determine the quantum of interest acquired by Tejas which was subject to the lump sum provision in paragraph V.

■ The appellants say that the provisions of paragraph V are unambiguous. We agree, and since there is no ambiguity, our determination of its meaning is limited to ascertaining the intention of the parties as expressed therein. *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 727–728 (Tex.1981). The writing *alone* will be deemed to express the intention of the parties. *City of Pinehurst v. Spooner Addition Water Co,* 432 S.W.2d 515, 518 (Tex.1968). Bearing these rules in mind, we now examine the language contained in paragraph V.

■ Paragraph V contains two sentences. The first sentence reads as follows:

"Contemporaneously with the execution hereof, the parties hereto are likewise executing a Contract of Purchase and Sale, providing for, *inter alia,* the assignment of Consolidated's interest in the pipeline system as herein defined to Tejas."

At the time of the execution of this document, Consolidated's interest in the pipeline system consisted of an undivided 33⅓% interest. Thus, this first sentence simply states that Consolidated has assigned its undivided 33⅓% interest to Tejas. The first half of the second sentence states:

"It is expressly understood and agreed by the parties hereto, that in the event Tejas shall at any time sell, assign or convey all or any portion of *such interest* in the pipeline system *thus acquired,* ..." (emphasis added)

The emphasized portion of this sentence clearly refers back to the first sentence. When that sentence is examined to determine what is meant by "such interest ... thus acquired" it is obvious that the parties meant only the undivided 33⅓% interest Tejas acquired from Consolidated.

The second sentence further reads as follows:

"... *except for* twenty-five percent (25%) of *such interest* to Peninsula Pipeline Corporation, ..." (emphasis added)

The phrase "such interest" again refers to the undivided 33⅓% interest assigned to Tejas by Consolidated. Subtracted from this 33⅓% interest is 25% of "such interest," or 8⅓%. Thus, as a result of this portion of the sentence, only an undivided 25% interest (33⅓% minus 25% of 33⅓% or 8⅓%) is subject to the balance of the sentence, which reads as follows:

"then Tejas shall, not later than ten (10) days subsequent to such sale, assignment of conveyance, pay to ⋅Consolidated in cash the sum of five hundred thousand dollars ($500,000.00) plus accrued interest less the aggregate of principal payments made pursuant to the terms hereof."

After considering the language of Paragraph V, as well as the other instruments between the parties, we must agree with the trial court's conclusion that the parties intended only an undivided 25% interest in Monco to be subject to the lump sum provision in Paragraph V.

The appellants argue that the trial court was required to consider the contracts between Gas Management and Tejas in determining the meaning of paragraph V. This argument cannot be sustained for at least two reasons. First, the Gas Management contracts were not offered or admitted into evidence. Therefore, how could the trial court consider them? Secondly, the appellants' argument that the trial court should have considered the Gas Management contracts is contrary to their argument that paragraph V of the NRIA is unambiguous. For these reasons, we hold that the trial court, in construing paragraph V, was not required to consider the Gas Management contracts.

The appellants further argue that the phrase "such interest . . . thus acquired," as used in paragraph V of the NRIA, was intended by the parties to mean Tejas' entire 50% interest because "such is the nature of an undivided interest." This argument is based on the trial court's findings that the undivided interest acquired from Consolidated was not physically identifiable and that Tejas also acquired an undivided 25% interest from Gas Management. Therefore, according to the appellants, the interest acquired from Consolidated was no longer distinguishable from the interest acquired from Gas Management, so that when any portion of the undivided 50% interest was assigned by Tejas, it necessarily assigned a portion of the interests acquired from both Consolidated and Gas Management. While this argument is interesting, it is not supported by any authority. We hold that the argument is insufficient as a basis for reversal. *See Skyland Developers v. Sky Harbor Associates,* 586 S.W.2d 564, 570 (Tex.Civ.App.—Corpus Christi 1979, no writ).

We hold that the lump sum provision contained in paragraph V applies only to the undivided 25% interest Tejas acquired from Consolidated. If the parties intended for this provision to apply to a greater interest, they should have expressed this intention in paragraph V of the NRIA. As written, however, it is impossible to construe paragraph V in the manner urged by the appellants, and we cannot make a new contract for the parties to this lawsuit. *Phillips Petroleum v. Gillman,* 593 S.W.2d 152, 154 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). The appellants' first three points of error are overruled.

The trial court, in Finding of Fact No. 16 found:

"That Tejas also entered into other transactions which resulted in its obtaining from another owner an additional 25% interest in the same Monco Transmission Company, giving it then a total undivided 50% interest."

The appellants, in their eighth point of error, complain of the trial court's failure to amend the above-quoted finding to the effect that Tejas also acquired a 25% interest in Monco from Gas Management "by the same or similar documents." As already noted, the documents whereby Tejas acquired a 25% interest in Monco from Gas Management are not in evidence and there is no testimony in the record as to what was contained therein. The appellants, in support of their contention, rely on the following statement made by the appellant William K. Anderson.

"QUESTION: Fine. My question, though, is who wanted this particular wording or this particular provision that's contained in Paragraph V? Who wanted that in the Net Revenue Interest? Was that something Tejas wanted in there or you wanted in there or who wanted it in there?

ANSWER: Well, inasmuch as that, in the opinion of Consolidated, was very germane to the contract, and inasmuch as Tejas preferred to handle the manner accounting-wise in a manner that would not be reflective upon their financials, it was to the obvious benefit and protection of Consolidated and Gas Management, which I understand executed similar type contracts, that this be included in the Net Revenue Interest Agreement."

The appellants, in their brief, argue that the above quotation constitutes evidence that "the documents executed by Consoli-

dated and Gas Management reflecting the trade with Tejas were similar type documents." We disagree. What Mr. Anderson *understood* as to the documents in the trade between Tejas and Gas Management is not evidence in the controversy between Tejas and the appellants. From the evidence before us, we hold that the transaction between Tejas and Consolidated was independent of any transaction with Gas Management. The eighth point is overruled.

The appellants, in their thirteenth point of error complain of the trial court's refusal to grant their motion for summary judgment. The point is without merit.

As a general rule, an order overruling a motion for summary judgment is not subject to review upon appeal. *Ackermann v. Vordenbaum,* 403 S.W.2d 362 (Tex.1966). No exception to that rule is shown by the appellants. The thirteenth point is overruled.

We have carefully considered the appellants' remaining points of error. They are also overruled.

The judgment of the trial court is AFFIRMED.