BIFANO, Anthony Thomas & Charles
Bifano, Jr., d/b/a Bifano
Brothers, Appellants,

v.

YOUNG, D.J., Appellee.

No. 13-83-195-CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 29, 1983.

Rehearing Denied Jan. 26, 1984.

Arthur M. Meyer, Jr., H. Campbell Zachry, Dallas, for appellants.

David B. Moseley, Jr., Moseley, Jones, Allen & Fuquay, Dallas, for appellee.

Before NYE, C.J., and YOUNG and KENNEDY, JJ.

## OPINION

NYE, Chief Justice.

This is a suit on a written lease agreement. Appellee, Dorothy Jean Young, brought suit against appellants, Anthony Thomas Bifano and Charles Bifano, Jr., individually and d/b/a Bifano Brothers, for the amount of unpaid contractual rental due for the last four months of the lease term. Appellee also claimed reimbursement for tax and utility payments owed on the lease property and reasonable attorney's fees. Appellants answered and pled fraud in the inducement, both as an affirmative defense and as a counterclaim. Following a jury trial, the court rendered judgment in favor of appellee for actual damages, plus attorney's fees. Appellants appeal to this Court on an equalization transfer from the Supreme Court. We affirm the judgment of the trial court.

In November of 1978, appellee purchased a building located in Dallas, Texas, owned by the appellants. At the time of sale,

appellee and appellants executed a lease agreement, leasing the subject property back to appellants for a period of one year, beginning on December 15, 1978, and ending on December 14, 1979. Appellants were in the retail fur business and leased the property to store fine furs, cleaning equipment and machines used for repair. The lease stipulated a monthly rental of $1,478.60, not subject to offset or deduction. The lease agreement also specified that appellants pay as "additional rent" all real estate taxes on the property, as well as the cost of all utility services.

It was undisputed that appellants paid all the lease payments through August 1979 and delivered to appellee their check for the September 1979 rent payment. Later, however, appellants directed the drawee bank to stop payment on this check. Appellants did not make further rental lease payments to appellee for the last three months of their lease. Appellee claims that, in addition to the last four months lease payments that were not paid, appellants owe for the county, city and school real estate taxes due and payable on the leased premises.

Appellants contend on appeal that prior to the lease execution, appellee negotiated to repair leaks in the roof of the premises and, alternatively, to replace the roof in exchange for a $5,000.00 reduction in the purchase price of the building. Appellants further alleged and attempted to prove at trial that this promise had been made fraudulently, without any intent that it be performed, and that, since this promise was a material element, and had been relied upon, the lease was void.

Appellee testified that she was unaware of any problems concerning the roof at the time the lease agreement was signed. Appellee was notified by appellant, Anthony Bifano, by letter dated July 12, 1979, that the roof on the building leaked. Appellee contends that, during the early part of September, the roof was repaired. Appellant, Anthony Bifano, testified they began to move furs from the building shortly after notice of the condition of the roof was given to appellee and completed moving the furs in August of 1979. Appellants contend they had *abandoned* the premises by the time the repairs were made in September because the roof leaked so severely it endangered their goods. However, the record shows appellants continued to use the building for storing their cleaning and other heavy equipment.

At trial, appellee sought to recover the unpaid contractual rental under the lease agreement. In answer to special issues, the jury found that appellee did not know nor should have known of leaks in the roof of the building prior to July 12, 1979; that appellee's failure to repair the leaks or replace the roof prior to September of 1979 did not interfere with appellants' use of the premises; appellants did not abandon said premises as a result of the failure to repair the leaks on the roof; and appellee's refusal or failure to repair or replace the roof on the Inwood premises was not a producing cause of damage to appellants. Judgment was entered in favor of appellee for the amount of unpaid lease rental, taxes and attorney's fees.

Appellants' first through fourth points of error complain that the trial court refused to consider and act upon appellee's failure to pursue her exclusive remedy under the terms of the lease and to present evidence proving the damages provided by such remedy.

It is well settled in Texas that, upon the failure of a lessee to pay rent, the lessor has the option of either suing immediately for anticipatory breach of the contract and recovering damages as a result of such breach, or the lessor may stand on his contract and sue for the past-due rentals after they come due. *Taco Boy, Inc. v. Redelco Co., Inc.*, 515 S.W.2d 319 (Tex.Civ. App.—Corpus Christi 1974, no writ); *Western Flavor Seal Company v. Kallison*, 389 S.W.2d 521, 522 (Tex.Civ.App.—San Antonio 1965, no writ); *Employment Advisors, Inc. v. Sparks*, 364 S.W.2d 478 (Tex. Civ.App.—Waco 1963), writ ref'd n.r.e., 368 S.W.2d 199 (Tex.1963); *Amco Trust v. Naylor*, 311 S.W.2d 257, 260 (Tex.Civ.App.

—San Antonio 1958), rev'd on other grounds, 159 Tex. 146, 317 S.W.2d 47 (1958); *Willis v. Thomas*, 9 S.W.2d 423 (Tex.Civ.App.—San Antonio 1928, writ dism'd); 35 Tex.Jur.2d, Landlord & Tenant § 142 (1962). The results can be almost identical on short-term leases. Here, there were only four months remaining in the lease at the time of default.

■ If the lease contract specifically provides for only one remedy and denominates that this is the only remedy, then the lessor is bound by the exclusive remedy set out in the contract. Remedies provided for in a contract may be permissive or exclusive. See *Vandergriff Chevrolet Company, Inc. v. Forum Bank*, 613 S.W.2d 68 (Tex.Civ.App.—Fort Worth 1981, no writ); *Stergois v. Babcock*, 568 S.W.2d 707, 708 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.). The mere fact that the contract provides a party with a particular remedy does not necessarily mean that such remedy is exclusive. *Vandergriff* at 70; *West Texas Utilities Company v. Huber*, 292 S.W.2d 702, 703 (Tex.Civ.App.—Eastland 1956, writ ref'd n.r.e.). A construction which renders the specified remedy exclusive should not be made unless the intent of the parties that it be exclusive is *clearly* indicated or declared. *Ryan Mortgage Investors v. Fleming-Wood*, 650 S.W.2d 928 (Tex.App.—Fort Worth 1983, no writ); *Tabor v. Ragle*, 526 S.W.2d 670, 676 (Tex.Civ. App.—Fort Worth 1975, writ ref'd n.r.e.); *Wilburn v. Missouri-Kansas-Texas Rail Co. of Texas*, 268 S.W.2d 726, 731 (Tex.Civ. App.—Dallas 1954, no writ). In determining the intent of the parties to an unambiguous written instrument, the general rule is that every clause must be given effect with a view toward what is objectively stated in the language of the instrument. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522 (Tex.1982); *Vandergriff*, at 70; *Skyland Developers, Inc. v. Sky Harbor Associates*, 586 S.W.2d 564, 570 (Tex.Civ. App.—Corpus Christi 1979, no writ).

Appellants contend that the lease can only be interpreted as stipulating that the exclusive remedy upon default was the termination of the lease and recovery of damages. Section 20(A) of the lease contract states:

20. REMEDIES OF LANDLORD: Upon the occurrence of any of the events of default listed in section 19, the landlord shall have the *option to pursue any one or more of the following remedies without any notice or demand whatsoever:*
A. Terminate this lease, in which event tenant shall immediately surrender the demised premises to landlord.... Tenant shall pay to landlord on demand the amount of all loss and damage which landlord may suffer by reason of such termination, whether through inability to relet the demised premises on satisfactory terms or otherwise.

\* \* \* \* \* \*

■ Following the express remedy in § 20(A), there are two other alternate remedies set out in paragraphs (B) and (C) of § 20 of the "form type" lease. One is to the effect that appellee could "Enter upon and take possession of the demised premises by force ... etc," and a final paragraph to the effect that the above remedies were non-exclusive. In the "form type" lease signed by appellants and appellee, paragraphs (B) and (C) of the form and the non-exclusive paragraph of the form were marked through and initialed by both parties. Appellants contend that, by striking through these form provisions for remedies on default, the parties intended that there was only one remedy available to appellee and that was the remedy specified in paragraph (A). We disagree. The lease specifically provided that the appellee had the option to pursue any one or more of the following remedies without any notice or demand whatsoever. This provision was not marked through or eliminated by the parties.

The appellants knew very well the remedy that the appellee pursued as a matter of fact of what actually took place prior to trial. The appellants did not object or except to appellee's pleading. Appellants' pleadings offered at trial did not raise the

issue of "exclusive remedy" under the lease agreement. Rather, appellants' defense and counterclaim for damages focused on allegations of fraudulent inducement by appellee as their basis for termination of the agreement and release of further liability. Appellants raised the "exclusive remedy" argument for the first time on Motion for Directed Verdict at the close of all testimony at trial. The motion was overruled by the trial court. Appellants failed to pursue this same exclusive remedy argument on Motion for New Trial. Appellants now bring forward their "exclusive remedy" contention on appeal, following judgment rendered against them for the amount of unpaid rental based on the rental terms of the lease agreement. The facts conclusively show that, upon appellants' failure to pay rent when due, appellee did not deliver written notice of such default to appellants, as set out in the lease as a condition precedent to an action for anticipatory breach. Appellee did not give notice of termination of the lease and demand that appellants surrender the premises, as the anticipatory breach provision provided. Appellee, as landlord, waited until the lease had expired at least four months after the initial breach and then initiated this action on the contract.

In reviewing a trial court's judgment where findings of fact and conclusions of law are not filed, as here, we must uphold the judgment on any legal theory that is supported by the evidence. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *Seaman v. Seaman,* 425 S.W.2d 339, 341 (Tex. 1968); *Reading & Bates Construction Company v. O'Donnell,* 627 S.W.2d 239, 242 (Tex.Civ.App.—Corpus Christi 1982, writ ref'd n.r.e.).

Appellants did not object to appellee's pleadings nor to the evidence of the amount owed under the lease. Appellants acknowledged at trial that they were obligated under the rental terms of the lease agreement to pay the full amounts contracted for throughout the lease term. We hold that the wording of the lease agreement did not exclude appellee's common law remedy for appellants' breaching the lease. Alternatively, we hold that appellants have effectively waived their "exclusive remedy" contention. Appellee could and did elect to keep the lease alive on appellants' failure to pay the stipulated rental amounts. She brought suit for the balance appellants agreed to pay. *Stubbs v. Stuart,* 469 S.W.2d 311 (Tex.Civ.App.— Houston [14th Dist.] 1971, no writ); *Wuksasch v. Hoover,* 247 S.W.2d 593 (Tex.Civ. App.—Austin 1952), aff'd, 152 Tex. 111, 254 S.W.2d 507 (1953); *Willis v. Thomas,* 9 S.W.2d at 425.

The second question presented by appellants' first through fourth points of error concerns the requisite proof of damages by appellee at trial. As we have held, appellee was entitled, upon proper pleading and proof, to recover the balance due of the agreed rent for the contractual period pled. *Crain v. Southern Warehouse Corp.,* 612 S.W.2d 283 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ); *Maida v. Main Building of Houston,* 473 S.W.2d 648, 651 (Tex.Civ.App.—Houston [14th Dist.] 1971 no writ); *Western Flavor Seal v. Kallison,* 389 S.W.2d 521, 522 (Tex.Civ.App.—San Antonio 1965, no writ); see also *Evons v. Winkler,* 388 S.W.2d 265, 289 (Tex.Civ.App. —Corpus Christi 1965, writ ref'd n.r.e.). Appellee testified, and appellants admitted at trial, to the fact that appellants had not paid the monthly rental as stipulated in the lease agreement for the last four months of the lease period. Appellee also pleaded and proved that appellants had not paid other amounts designated as "additional rental" and utility payments as agreed to by appellants under the lease contract. We hold that there is sufficient evidence to support the implied finding by the trial court that appellee proved her damages. Points of error numbers one through four are overruled.

Appellants' fifth through eighth points of error concern the central theme of the trial. These points complain of the trial court's exclusion of evidence of fraud in the inducement pleaded by appellants both as an affirmative defense and as a counter-

claim. Appellants complain that the trial court's error in excluding such evidence grew out of the court's granting of appellee's motion in limine and extended to the court's subsequent refusal to permit such testimony upon offer at trial.

The record contains no order granting a motion in limine. Even if such an order was before this Court, the granting or overruling of a such motion will not, in and of itself, constitute reversible error. *Hartford Accident & Indemnity Company v. McCardell*, 369 S.W.2d 331, 335 (Tex. 1963); *Redding v. Ferguson*, 501 S.W.2d 717, 722 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.). The purpose of a motion in limine is to avoid the injection into the trial of matters which are irrelevant, inadmissible and prejudicial. The granting of the motion is not a final ruling on the evidence. *Wilkins v. Royal Indemnity Company*, 592 S.W.2d 64, 66 (Tex.Civ.App. —Tyler 1979, no writ).

Regarding the question of whether the trial court committed reversible error in excluding the evidence of fraud in the inducement, as set out in appellants' bill of exception, both parties direct this Court's attention to *Hobbs Trailers v. Arnett Grain Company, Inc.*, 560 S.W.2d 85 (Tex. 1977). The Supreme Court, in *Hobbs Trailers*, held that a written lease contract between the parties was controlling and that evidence of prior negotiations which varied and contradicted the clear and exclusive terms of the contract was inadmissible under the parol evidence rule. The Texas Supreme Court reiterated the established rule of law that "the very purpose of putting the agreement in writing is to definitely settle its terms and to exclude all oral understandings to the contrary." *Hobbs*, 560 S.W.2d at 87 (quoting *Super-Cold Southwest Co. v. Elkins*, 140 Tex. 48, 166 S.W.2d 97, 98 [1942], and *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30 [1958]).

Appellants contend that the decision in *Hobbs Trailers*, is not controlling. Appellants point out that the "parol evidence rule will not prevent proof of fraud or mutual mistake," citing *Santos v. Mid-continent Refrigerator Co.*, 471 S.W.2d 568, 569 (Tex.1971). Appellants contend, therefore, that the parol evidence rule is not applicable as the basis to exclude the proffered testimony of fraud in the inducement for it is introduced not to vary the terms of the writing, "but to show that the writing itself from its inception, never became legally effective." See *Santos*, 471 S.W.2d at 569; *Guisinger v. Hughes*, 363 S.W.2d 861 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.).

The final draft of the lease signed by appellants and appellees states:

"2. ACCEPTANCE OF PREMISES: Tenant acknowledges that it has fully inspected the demised premises and accepts the demised premises, and any buildings and improvements situated thereon, as suitable for the purpose for which the same are leased in their present condition, except ...."

This provision of the lease was undisturbed. There was no evidence of any exception or reservation made by appellants on acceptance of the premises. Appellants' pleadings and the evidence presented at trial, even considering the excluded testimony, did not establish the requisite elements for a claim of fraudulent inducement, thereby permitting the introduction of extrinsic evidence to vitiate an otherwise valid contract. Where admission of such testimony would not have required a finding for appellants, the alleged error in exclusion of the testimony offered by appellants was harmless. *Crawford v. Haywood*, 392 S.W.2d 387, 389 (Tex.Civ. App.—Corpus Christi 1965, no writ).

Appellants have not demonstrated that the exclusion of the proffered testimony caused or probably caused the rendition of an improper judgment. Tex.R.Civ.P., R. 434; *Lemon v. Spann*, 633 S.W.2d 568, 571 (Tex.App.—Texarkana 1982, no writ); *Vega v. Royal Crown Bottling Company*, 526 S.W.2d 729, 732 (Tex.Civ.App.—Corpus Christi 1975, no writ); *Thomas v. Southern Lumber Co.*, 181 S.W.2d 111, 115 (Tex. Civ.App.—Waco 1944, no writ). We have

considered all of appellant's points of error, and they are overruled.

The judgment of the trial court is affirmed.

KENNEDY, J., dissents.

KENNEDY, Justice, dissenting.

I respectfully dissent. This is a suit on a written lease agreement. The majority opinion states the facts of the case and the evidence before the trial court.

I believe that *Sun Oil Company (Delaware) v. Madeley*, 626 S.W.2d 726 (Tex. 1981), is controlling in this case. Sun Oil involved the construction of an oil and gas lease. The issue before the court was "are the lessors entitled to one-half the proceeds from the ⅞ working interest gas?" For the more than forty years of production, Sun Oil had paid to lessors, in addition to other sums, one-half the working interest gas. Then, gas wells were completed, and Sun claimed these payments were not required by the lease. Lessors filed an action for a declaratory judgment.

In *Sun Oil*, as in the case at bar, there was no claim that the lease was ambiguous. The disagreement was over the interpretation of the lease and what circumstances could be considered in interpreting the lease. "(M)ere disagreement over the interpretation of the lease does not make it ambiguous..." *Sun Oil* at 727.

"The courts will enforce an unambiguous instrument as written; and in the ordinary case, the writing alone will be deemed to express the intention of the parties." *Sun Oil* at 728. See also: *Cherokee Water Company v. Forderhause*, 641 S.W.2d 522 (Tex.1982); *Aetna Life and Casualty Company v. Gunn*, 628 S.W.2d 758 (Tex. 1982); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex.1968); *Fritz v. Tejas Gas Corp.*, 644 S.W.2d 786 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); *Aztec Services, Inc. v. Quintana-Howell Joint Venture*, 632 S.W.2d 160 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.).

The majority opinion in the case at bar looks beyond the lease in question to extrinsic evidence. It says:

"The facts conclusively show that, upon appellants' failure to pay rent when due, appellee did not deliver written notice of such default to appellants, as set out in the lease as a condition precedent to an action for anticipatory breach. Appellee did not give notice of termination of the lease and demand that appellants surrender the premises, as the anticipatory breach provision provided. Appellee, as landlord, waited until the lease had expired at least four months after the initial breach and then initiated this action on the contract."

In reviewing a trial court's judgment where findings of fact and conclusions of law are not filed, as here, we must uphold the judgment on any legal theory that is supported by the evidence." However, in *Sun Oil*, the Texas Supreme Court tells us "Where the meaning of the contract is plain and unambiguous, a party's construction is immaterial." In that case, the Court refused to consider extrinsic evidence that Sun Oil had paid the one-half working gas interest to the lessors *for forty years*. "Only where a contract is first found to be ambiguous may the courts consider the party's interpretation." *Sun Oil* at 732. Since the lease before us is undisputedly unambiguous, we should consider only the wording of the lease and the circumstances surrounding its execution and not subsequent extrinsic evidence of the party's interpretation. *Sun Oil* at 732.

Turning now to the lease agreement itself, the majority opinion bases its interpretation on the language "the landlord shall have the *option to pursue any one or more of the following remedies without any notice or demand whatsoever:*" The majority contends that the above language preserves the common law remedy of the landlord. I disagree.

Written or typewritten contract provisions are to be given effect over printed matter in a form contract. *Alba Tool and Supply Co. v. Industrial Contractors,*

*Inc.,* 585 S.W.2d 662 (Tex.1979); *Southland Royalty Co. v. Pan American Petroleum Corp.,* 378 S.W.2d 50 (Tex.1964); *McMahon v. Christmann,* 157 Tex. 403, 303 S.W.2d 341 (1957). When the parties to the lease agreement deleted options 20B and 20C and the paragraph providing that the remedies were non-exclusive, they expressed the intention that the remedy should be exclusive. This express intention should prevail over the printed form. I would hold that the remedy expressed in 20A is the exclusive remedy available to appellee.

The majority opinion also holds that appellant's have waived their exclusive remedy because 1) appellants did not object or except to appellee's pleadings, 2) appellants' pleadings did not raise the issue of exclusive remedy, and 3) after appellants' motion for directed verdict was overruled appellant did not pursue the exclusive remedy argument on motion for new trial.

To preserve error for appellant, it is not necessary to raise the point of error in a motion for new trial if the error is otherwise disclosed in the record. Tex.R.Civ.P. 324. *City of Plano v. Acker,* 601 S.W.2d 68 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.); *Brown v. Brown,* 590 S.W.2d 808 (Tex.Civ.App.—Eastland 1979, no writ).

Appellant need not plead his interpretation of the contract as an affirmative defense. "The burden is of course on plaintiffs to plead and prove a contract the terms of which will support the recovery sought in their pleadings." *Mergenthaler Linotype Co. v. Herrmann,* 217 S.W.2d 122 (Tex.Civ.App.—Fort Worth 1949, no writ); *See also, Warden v. Thornburg,* 564 S.W.2d 480 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

The purpose of pleadings is to put one's opponent on notice as to the parameters of the forthcoming battle. Defects are not waived if challenged by special exception, objection to evidence, *motion for instructed* verdict or objection to the charge. *Sherrod v. Bailey,* 580 S.W.2d 24 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.); 2 McDonald Texas Civil Practice 49, Pleading: General § 5.78 (1970). Rule 90 only requires that the defect be "pointed out by motion or exception in writing and brought to the attention of the judge in the trial court before the instruction or charge to the jury ...." Tex.R.Civ.P. 90.

I would reverse the judgment of the trial court.

OFFICIAL FORM L-1 © 1976

**16. INDEMNITY AND PUBLIC LIABILITY INSURANCE:**

A. Landlord shall not be liable to Tenant or to Tenant's employees, agents or visitors, or to any other person whomsoever, for any injury to persons or damage to property on or about the demised premises or any adjacent area owned by Landlord caused by the negligence or misconduct of Tenant, its employees, subtenants, licensees or concessionaires or any other person entering the demised premises under express or implied invitation of Tenant, or arising out of the use of the demised premises by Tenant and the conduct of its business therein, or arising out of any breach or default by Tenant in the performance of its obligations hereunder; and Tenant hereby agrees to indemnify Landlord and hold it harmless from any loss, expense or claims arising out of such damage or injury. Tenant shall not be liable for any injury or damage caused by the negligence or misconduct of Landlord, or its employees or agents, and Landlord agrees to indemnify Tenant and hold it harmless from any loss, expense or damage arising out of such damage or injury.

B. Landlord and Landlord's agents and employees shall not be liable to Tenant for any injury to persons or damage to property resulting from the demised premises or other premises owned by Landlord becoming out of repair or by defect in or failure of equipment, pipes, or wiring, or broken glass, or by the backing up of drains, or by gas, water, steam, electricity or oil leaking, escaping into the demised premises, regardless of the source, or by dampness (except where due to Landlord's willful failure to make repairs required to be made hereunder, after the expiration of a reasonable time after written notice to Landlord of the need for such repairs) or by fire, explosion, falling plaster or ceiling. Landlord shall not be liable to Tenant for any loss or damage that may be occasioned by or through the acts or omissions of other tenants of the Landlord or caused by operations in construction of any private, public or quasi-public work, or of any other persons whomsoever, excepting only duly authorized employees and agents of Landlord, ~~or tenant may terminate this Lease without further obligation.~~

**17. CONDEMNATION:**

A. If, during the term of this lease or, any extension or renewal thereof, all or a substantial part of the demised premises should be taken for any public or quasi-public use under any governmental law, ordinance or regulation or by right of eminent domain, or should be sold to the condemning authority under threat of condemnation, this lease shall terminate and the rent shall be abated during the unexpired portion of this lease, effective from the date of taking of the demised premises by the condemning authority.

B. If less than a substantial part of the demised premises is taken for public or quasi-public use under any governmental law, ordinance or regulation, or by right of eminent domain, or is sold to the condemning authority under threat of condemnation, Landlord, at its option, may by written notice terminate this lease or shall forthwith at its sole expense restore and reconstruct the buildings and improvements (other than leasehold improvements made by Tenant or any assignee, subtenant or other occupant of the demised premises) situated on the demised premises in order to make the same reasonably tenantable and suitable for the uses for which the demised premises are leased as defined in paragraph 3. The rent payable hereunder during the unexpired portion of this least shall be adjusted equitably.

C. Landlord and Tenant shall each be entitled to receive and retain such separate awards and portions of lump sum awards as may be allocated to their respective interests in any condemnation proceedings. The termination of this lease shall not affect the rights of the respective parties to such awards.

18. HOLDING OVER: Should Tenant, or any of its successors in interest fail to surrender the demised premises, or any part thereof, on the expiration of the term of this lease, such holding over shall constitute a tenancy from month to month, at a monthly rental equal to 1.10 % of the rent paid for the last month of the term of this lease unless otherwise agreed in writing. or $1,394.00 per month. *1,626.46*

19. DEFAULT BY TENANT: The following events shall be deemed to be events of default under this lease:

A. Failure of Tenant to pay any installment of the rent or other sum payable to Landlord hereunder on the date that same is due and such failure shall continue for a period of 10 days. after delivery of written notice thereof to tenant.

B. Failure of Tenant to comply with any term, condition or covenant of this lease, other than the payment of rent or other sum of money, and such failure shall not be cured within 30 days after written notice thereof to Tenant.

C. Insolvency, the making of a transfer in fraud of creditors, or the making of an assignment for the benefit of creditors by Tenant or any guarantor of Tenant's obligation.

D. Filing of a petition under any section or chapter of the National Bankruptcy Act, as amended, or under any similar law or statute of the United States or any State thereof by Tenant or any guarantor of Tenant's obligations, or adjudication as a bankrupt or insolvent in proceedings filed against Tenant or such guarantor.

E. Appointment of a receiver or trustee for all or substantially all of the assets of Tenant or any guarantor of Tenant's obligations hereunder.

F. Abandonment by Tenant of any substantial portion of the demised premises or cessation of use of the demised premises for the purpose leased, except subleasing consented to by Landlord.

20. REMEDIES OF LANDLORD: Upon the occurrence of any of the events of default listed in Section 19, Landlord shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever:

A. Terminate this lease, in which event Tenant shall immediately surrender the demised premises to Landlord. If Tenant fails to so surrender such premises, Landlord may, without prejudice to any other remedy which it may have for possession of the demised premises or arrearages in rent, enter upon and take possession of the demised premises and expel or remove Tenant and any other person who may be occupying such premises or any part thereof, by force if necessary, without being liable for prosecution or any claim for damages therefor. Tenant shall pay to Landlord on demand the amount of all loss and damage which Landlord may suffer by reason of such termination, whether through inability to relet the demised premises on satisfactory terms or otherwise.

B. Enter upon and take possession of the demised premises, by force if necessary, without terminating this lease and without being liable for prosecution or for any claim for damages therefor, and expel or remove Tenant and any other person who may be occupying such premises or any part thereof. Landlord may relet the demised premises and receive the rent therefor. Tenant agrees to pay to Landlord monthly or on demand from time to time any deficiency that may arise by reason of any such reletting. In determining the amount of such deficiency, the brokerage commission, attorney's fees, remodeling expenses and other costs of reletting shall be subtracted from the amount of rent received under such reletting.

C. Enter upon the demised premises, by force, if necessary, without terminating this lease and without being liable for prosecution or for any claim for damages therefor, and do whatever Tenant is obligated to do under the terms of this lease. Tenant agrees to pay Landlord on demand for expenses which Landlord may incur in thus effecting compliance with Tenant's obligations under this lease, together with interest thereon at the rate of 10% per annum from the date expended until paid. Landlord shall not be liable for any damages resulting to the Tenant from such action, whether caused by negligence of Landlord or otherwise.

Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided or any other remedies provided by law, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any rent due to Landlord hereunder or of any damages accruing to Landlord by reason of the violation of any of the terms, conditions and covenants herein contained.

Page 4