

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00214-CV

MATTHEW LYKKEN AND        APPELLANTS
SUZANNE LYKKEN

V.

JON K. KINDSVATER AND JAN G.        APPELLEES
KINDSVATER

----------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 096-262837-12

----------

## MEMORANDUM OPINION[1]

----------

Appellants Matthew Lykken and Suzanne Lykken appeal the trial court's

orders granting summary judgment in favor of appellees Jon K. Kindsvater and

Jan G. Kindsvater and awarding attorneys' fees to the Kindsvaters. We reverse

---

[1]*See* Tex. R. App. P. 47.4.

the summary judgment on the Lykkens' warranty of seizen claim and the award of attorney's fees.

**Background Facts**

The Kindsvaters owned property in Colleyville in Tarrant County. In September 2008, the Kindsvaters entered into an oil and gas lease with Titan Operating, LLC. Under the lease, the Kindsvaters were entitled to a bonus payment. Titan recorded a memorandum of the lease in the real property records of Tarrant County in 2009.

On February 12, 2012, the Kindsvaters entered into a sales agreement with the Lykkens for the Kindsvaters' property. The sales contract required the Kindsvaters to convey a general warranty deed. Paragraph 6(D) states that the Lykkens could object to any defects, exceptions, or encumbrances to title. If they objected, the contract states that the Kindsvaters

> shall cure the timely objections . . . within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

On February 21, 2012, the Lykkens received a title commitment from the title insurance company that contained an exception from the title because of the notice of the oil and gas lease in the property records. They told the Kindsvaters' agent that they had been unaware of the lease, requested a copy of the lease, and demanded that the Kindsvaters "turn over any proceeds received [under the lease] and . . . convey the rights to any future proceeds." On February 22, 2012,

2

the Kindsvaters' agent confirmed that the Kindsvaters would transfer the mineral rights to the Lykkens.

The Lykkens received a copy of the lease on February 28, 2012. The next day, they sent a demand letter to the Kindsvaters, arguing that the Kindsvaters had received a $9,325 signing bonus and although the Kindsvaters could convey their future rights under the lease, the Lykkens were "still damaged to the extent of the signing bonus" that the Kindsvaters had already received. The Lykkens demanded "cash compensation or a price discount in compensation for that determent."

On March 5, 2012, the Lykkens submitted a formal objection to the title defect represented by the gas lease.[2] The day before closing, on March 7, 2012, Matthew Lykken sent an email to the Kindsvaters stating,

> [T]omorrow afternoon at close, unless we have beforehand reached an agreed settlement with the sellers, we will tender the purchase price, renew our objection to the defective title, claim an abatement of purchase price in the amount of $9,325, and object to the escrow agent's release of $9,325 of the purchase price to sellers on the grounds that sellers will not be tendering that which they are required to tender to the escrow agent in order to trigger the release of funds, i.e. good title and a warranty deed to the property inclusive of the mineral rights or, at least, warranty deed for the rights possessed by the sellers, including an assignment of their interest in the gas lease and financial compensation in the full amount of the bonus previously received. . . . If the escrow agent does not initiate legal action to determine the appropriate disposition of the funds in interpleader, we will promptly initiate action against the sellers to

---

[2]No copy of the objection is in the record. However, the Kindsvaters do not dispute the Lykkens' claim that they filed a formal objection.

3

obtain a judgment confirming our $9,325 abatement and to have those funds released back to us.

At closing on March 8, 2012, the Lykkens tendered the full purchase price, but told the escrow agent to withhold $9,325 for the "presumed bonus payment" under the gas lease. The escrow agent told the Lykkens that he could not do that under Texas law. The Lykkens agreed to disburse the full purchase price from the escrow account. They signed a printed copy of the above email from March 7, 2012, and wrote,

> For the reasons stated above, the undersigned purchasers formally object to the release of the purchase money funds to the extent of $9,325 plus estimated costs of determination due to the failure of sellers to tender full performance as required by the contract and demand that said funds be retained in escrow pending performance of satisfactory resolution of the dispute.

The Kindsvaters executed and delivered a general warranty deed and transferred the gas lease.

In November 2012, the Lykkens sued the Kindsvaters for fraudulent inducement, breach of warranties of seizen and right to convey, and in the alternative, breach of warranty against encumbrances, "enforcement of conveyance," and breach of contract. The Lykkens filed their petition pro se but requested that they be awarded attorneys' fees.

In December 2012, the Kindsvaters filed an answer and special exceptions. They then filed a motion for summary judgment on all of the Lykkens' claims against them, arguing that they conveyed all of their title to the Lykkens via the deed and assignment. In January 2013, the Kindsvaters filed a

4

motion for a protective order against the Lykkens' requests for admissions and disclosures. They argued that the requests were numerous, overly burdensome, and premature, and they requested that the trial court abate the response deadline until after the hearing on their motion for summary judgment. The trial court granted the motion and ordered that the deadline to respond to the requests be extended until thirty days after the trial court's order on the special exceptions and motion for summary judgment.

The Lykkens filed a response to the special exceptions and to the motion for summary judgment. They also filed a supplemental petition and an amended response to the Kindsvaters' special exceptions and motion for summary judgment. They made no new claims and sought no new relief in their supplemental petition, but they clarified that their "enforcement of conveyance" claim "should be understood to encompass" a request for specific performance or a claim for money had and received. They also noted that "Matthew Lykken has been required to make substantial out-of-pocket expenditures for admission fees, dues, and taxes in order to become a licensed Texas attorney for this proceeding."[3] In their amended response to the motion for summary judgment, the Lykkens requested partial summary judgment be granted "determining that [the Kindsvaters] are liable for breach of the warranties of seisen and right to convey."

---

[3]Matthew Lykken entered an appearance for the Lykkens in January, 2013.

5

At the hearing on the Kindsvaters' motions, the Kindsvaters elected to "hold the special exceptions until after disposition of the motion for summary judgment." After the hearing, the trial court granted the Kindsvaters' motion for summary judgment and dismissed all of the Lykkens' claims. Both parties then filed motions regarding attorneys' fees and requesting a final order. In June 2013, after a hearing, the trial court granted the Kindsvaters' request for attorney's fees. The Lykkens then filed this appeal.[4]

**Standard of Review**

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to

---

[4]The Lykkens state in their appellate brief that they are not challenging the summary judgment order on their fraudulent inducement claim. They also state that their "claims for breach of contract and money had and received fell away when [the Kindsvaters] admitted, at the summary judgment hearing, that they delivered a valid warranty deed in execution of the earnest money contract."

6

summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

## Discussion

### I. Summary judgment

In their first issue, the Lykkens argue that the trial court erred by granting summary judgment on their breach of warranty claim because the property was subject to an active oil and gas lease.

#### A. The Covenant of Seizen

The Lykkens sued the Kindsvaters for breach of the warranties of seizen and right to convey. Seizen (also spelled seisen, seizin, and seisin) is a relatively uncommon term in breach of covenants of warranty cases in recent history.[5] The covenant of seizen is "a guaranty against any title existing in a third person [that] might defeat the estate granted." *Langford v. Newsom*, 220 S.W. 544, 545 (Tex. Comm'n App. 1920, holding approved). The covenant of seizen is synonymous with the covenant of good right to convey and covenant of ownership "and in the absence of any qualifying expressions, [is] read into every conveyance of land or an interest in land, except in quitclaim deeds." *Fender v. Farr*, 262 S.W.2d 539, 542–43 (Tex. App.—Texarkana 1953, no writ). If a grantor does not own the estate in land that he undertakes to convey, he breaches the covenant at the

---

[5]Our search found only about sixteen cases in Texas in the past fifty years that used the word. This court has employed the term only once, in 1915. *See Anderson v. Menefee*, 174 S.W. 904, 908 (Tex. Civ. App.—Fort Worth 1915, writ ref'd).

very moment the deed is made. *See Westrope v. Chambers' Estate*, 51 Tex. 178, 187 (1879) ("[T]he covenant for right to convey is one in presenti, and if broken, the breach occurs at the moment of its creation; the covenant, in effect, being that a particular state of things exists at that time, and this not being true, the delivery of the deed which contains such a covenant causes an instantaneous breach."); *Fender*, 262 S.W.2d at 542–43.

The Kindsvaters delivered a general warranty deed that contained no reservations or exceptions despite the existence of a mineral lease that had granted to Titan an interest in the mineral estate. A mineral lease "is a conveyance of the title to the minerals in place subject to certain special limitations which render, what would otherwise have been an absolute fee simple, a determinable fee." A. W. Walker, Jr., *The Nature of the Property Interests Created by an Oil and Gas Lease in Texas*, 7 Tex. L. Rev. 539, 554 (1929); *see also Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192 (Tex. 2003) ("When an oil and gas lease reserves only a royalty interest, the lessee acquires title to all of the oil and gas in place, and the lessor owns only a possibility of reverter and has the right to receive royalties."). Thus, the Kindsvaters did not have title to the entire mineral estate at the time they executed and delivered the deed. Because they purported, through the clear language of the deed, to convey the entire mineral estate to the Lykkens when a

8

third party had title to part of that estate, the Kindsvaters were in immediate breach of the covenant of seizen.[6]

We are discomforted by the idea that a party may close on a contract when he knows at the time of agreement that the other party is in breach and he intends to sue on the contract for that breach. However, we are limited to evaluating only the issues that are properly before us. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer[,] or other response shall not be considered on appeal as grounds for reversal."). The Kindsvaters sought summary judgment on the Lykkens' breach of warranties claim on the sole ground that they did not breach the warranty because they conveyed what title they possessed at the time. This ground does nothing to negate an element of the Lykkens' breach of warranties claim. *See Frost Nat'l Bank*, 315 S.W.3d at 508. Neither does the fact that the Lykkens were aware of the lease at the time they accepted the deed. *See City of Beaumont v. Moore*, 146 Tex. 46, 57, 202 S.W.2d 448, 455 (1947) ("In so far as the warranty is concerned it is not material that Moore possessed or was charged with knowledge of the servitude or the limitations of the city. His rights under the warranties arise not from any independent knowledge he possessed, or with which he was charged, but solely from the language of the deed and the warranties included and read into it."); *Shield v. Donald*, 253 S.W.2d 710, 712

---

[6]This is not to say that the Kindsvaters cannot establish some defense to the Lykkens' claim. That issue is not before us, and we do not address it.

9

(Tex. Civ. App.—Fort Worth 1952, writ ref'd n.r.e.) ("Since Shield, in the mortgage given by him, purported to convey and warrant title to the whole tract, notice, either actual or constructive, had nothing to do with the right of appel[l]ee to recover for the breach of the covenant of general warranty so contained in such mortgage."). The Kindsvaters' argument that the Lykkens did not pursue their contractual remedy (that is, cancelling the contract after the Kindsvaters had the opportunity to cure the defect in title) likewise fails to negate the Lykkens claim. *See Ryan Mortg. Investors v. Fleming-Wood*, 650 S.W.2d 928, 933–34 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.) (holding that wording of sales contract "did not exclude his common-law remedies so that he can pursue any remedy which the law affords in addition to the remedy provided in the contract" and that although purchaser "may have been conclusively deemed to have accepted Seller's title, . . . that does not mean he cannot pursue his remedies for the defects"); *see also Bifano v. Young*, 665 S.W.2d 536, 539 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.) ("The mere fact that the contract provides a party with a particular remedy does not necessarily mean that such remedy is exclusive. A construction which renders the specified remedy exclusive should not be made unless the intent of the parties that it be exclusive is *clearly* indicated or declared.") (citations omitted). We therefore find ourselves constrained to sustain this portion of the Lykkens' first issue.

**B. The Lykkens' cross-motion for summary judgment**

The Lykkens request that we grant summary judgment determining that the Kindsvaters breached the deed warranties and are liable for damages equal to the bonus amount. The Kindsvaters argue that no motion for summary judgment was before the trial court. The Lykkens contend that their request for partial summary judgment, buried in their amended, forty-eight-page, single-spaced response to the Kindsvaters' motion for summary judgment,[7] satisfies all the requirements of a motion for summary judgment. *See* Tex. R. Civ. P. 21(a) (stating that a motion must be filed in writing and state the grounds and relief sought), 166a(c) (stating that a motion for summary judgment must state the specific grounds on which judgment is sought). However, it was not timely filed. A nonmovant is entitled to twenty-one days' notice prior to the hearing on a motion for summary judgment. *Id.* 166a(c) ("Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing."). The hearing on the Kindsvaters' motion was held on January 24, 2013. The Lykkens filed their original response on January 4, 2013, and their amended response on January 18, 2013. Thus, neither response was a timely cross-motion for summary judgment. *See Jones v. Ill. Emp'rs Ins. of Wausau*, 136 S.W.3d 728, 735 (Tex. App.—Texarkana 2004, no pet.) (holding that plaintiff's response to

---

[7]The Lykkens' original response was twenty pages, single-spaced.

11

defendant's motion for summary judgment containing his cross-motion was timely as a response but not a cross-motion). The twenty-one-day notice requirement is strictly enforced by the courts. *Lewis v. Blake*, 876 S.W.2d 314, 316 (Tex. 1994). The Lykkens did not obtain leave of court to file the motion late, and we will not consider their motion now.[8] *See Jones*, 136 S.W.3d at 735 ("We will therefore consider [the plaintiff's] motion as a response to the motion for summary judgment and nothing more."). We overrule the remainder of the Lykkens' first issue.

## II. The Lykkens' remaining issues

In their second issue, the Lykkens argue that the trial court erred by finding that they failed to raise a viable claim for damages. Because we are reversing the summary judgment on the Lykkens' cause of action for breach of the covenant of seizen, we need not reach this issue. *See* Tex. R. App. P. 47.1.

In their third issue, the Lykkens argue that the trial court erred by granting summary judgment on their claims without giving them the opportunity to amend their pleadings. Because we hold that summary judgment was improper on other grounds, we also do not need to reach this issue. *See id.*

In their fourth issue, the Lykkens argue that the trial court erred by awarding the Kindsvaters their attorney's fees. Because we are reversing the

---

[8]The Lykkens argue that the Kindsvaters waived any complaint regarding the timeliness of their cross-motion by not objecting at the January 24, 2013 hearing. There is no indication in the record that the Kindsvaters or the trial court agreed to hear the Lykkens' motion at the hearing on the Kindvaters' motion.

summary judgment in favor of the Kindsvaters on the Lykkens' cause of action for breach of the covenant of seizen, we sustain their complaint of the award of attorney's fees.  As we have not granted summary judgment to the Lykkens, we decline their request to award them their attorney's fees.

## Conclusion

Having sustained the Lykkens' first issue as to their cause of action for breach of the warranty of seizen, we reverse that part of the summary judgment. Having sustained the Lykkens' fourth issue, we also reverse the award of attorney's fees to the Kindsvaters, and we remand the case for further proceedings consistent with this opinion.  *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006) (concluding that because evidence of unsegregated fees constitutes some evidence of an entitlement to segregated fees, remand was required).

PER CURIAM

PANEL:  GABRIEL, MCCOY, and MEIER, JJ.

MEIER, J., dissents without opinion.

DELIVERED:  November 6, 2014

13